[Civ. No. 34813. Second Dist., Div. Two. Nov. 21, 1969.]

UNIMART, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RETAIL CLERKS UNION, LOCAL 770, AFL-CIO,
Real Party in Interest.

## Counsel

Tyre & Kamins and Peter M. Appleton for Petitioner.

No appearance for Respondent.

Arnold, Smith & Schwartz, Kenneth M. Schwartz and Laurence D. Steinsapir for Real Party in Interest.

## Opinion

**ALARCON, J. pro tem.**\*—In a proceeding instituted on behalf of Retail Clerks Union, Local 770, AFL-CIO (hereinafter referred to as Union) against Unimart for an order to compel arbitration under a collective bargaining agreement, pursuant to section 1281.2 of the Code of Civil Procedure, respondent court entered its minute order on May 29, 1969, directing arbitration. Petitioner filed in this court its petition for writ of certiorari or prohibition (treated herein as mandate)[1] to restrain further proceedings and to set aside said order.

Petitioner (hereinafter referred to as Unimart) is engaged in the retail department store business and owns and operates several stores within the geographical jurisdiction of the Union in the County of Los Angeles. The collective bargaining agreement between the Union and Unimart applies to all retail store employees and office clerical employees (with certain exclusions not pertinent to the discussion herein) employed in said retail stores and offices. The agreement provides: "B. Additional Locations. The parties further agree that, should the Employer acquire, establish or operate an additional store or department within the present geographical jurisdiction of the Union, the Agreement shall apply to the retail store employees and office clerical employees as defined above employed in such store or department; . . ."

Union alleged in its petition: "A controversy or dispute has arisen out of said collective bargaining agreement. The Union contends that Unimart has opened a new discount store within the geographical jurisdiction of the Union using the name of its sister corporation, 'Two Guys', and has refused to apply the collective bargaining agreement between Unimart and the Union in accordance with its terms."

---

\*Assigned by the Chairman of the Judicial Council.

[1]See *Powell* v. *Superior Court,* 48 Cal.2d 704, 705 [312 P.2d 698]; *DeLosa* v. *Superior Court,* 166 Cal.App.2d 1, 2 [332 P.2d 390]; *Bertero* v. *Superior Court,* 216 Cal.App.2d 213, 214 [30 Cal.Rptr. 719]; *Proctor & Gamble Mfg. Co.* v. *Superior Court,* 124 Cal.App.2d 157, 162 [268 P.2d 199].

Unimart filed a demurrer to the petition on grounds that it did not state a cause of action, and that there was a defect of parties in that Union failed to join an indispensable party. On May 16, 1969, the petition and the demurrer came on for hearing. The court took the matters under submission and granted both parties five days in which to file additional papers. On May 20, 1969, Unimart filed its Response to Petition to Order Arbitration, in which it denied that it was a corporation as alleged in the petition, and alleged that it "is a division of Food Giant Markets, Inc., a California corporation." It further denied that Unimart has opened a new store within the geographical jurisdiction of the Union, and alleged that the new store, referred to by Union "is operated by Two Guys-San Bernardino, Inc., a California corporation"; that Unimart does not own any stock or other equity interest in Two Guys-San Bernardino, Inc., and that none of its employees are employed at said store. The new store will be referred to herein as "Two Guys."

On May 29, 1969, respondent court, by minute order made the following ruling: "Petition to order Arbitration having heretofore been taken under submission by the Court is now granted. Respondent Unimart, Inc. is ordered to choose an Arbitrator and to proceed to arbitrate the dispute. Said respondent's demurrer to petition to order Arbitration is overruled. The fact that there may also be a trilateral dispute should not stay the arbitration of a bilateral dispute."

The existence of the collective bargaining agreement between the Union and Unimart, and Unimart's refusal to apply the agreement to the new store, as well as its refusal to arbitrate, are all undisputed. The issue in controversy is whether or not Unimart did "acquire, establish or operate an additional store" to which the agreement must be applied. Since an award against Unimart will affect Two Guys, the issue necessarily involves inquiry into the relationship between Unimart and Two Guys and its employees. The question before us is whether this is a matter to be decided by the court or by arbitration.

Unimart, relying upon *Retail Clerks Union v. L. Bloom Sons Co.,* 173 Cal.App.2d 701 [344 P.2d 51], contends that a court must find that Two Guys is the *alter ego* of Unimart before it is obligated to arbitrate the coverage issue with Union. It is also contended that Two Guys is an indispensable party to any litigation concerning coverage of the new store.

Union contends that, in refusing to apply the agreement to the new store, Unimart "has created a controversy as to the application and/or interpretation of a provision of the agreement" within the meaning of Article XII, Section B, of the agreement,[2] and that the dispute is therefore one to be

---

[2]Section B provides: "DEFINITIONS. The term 'grievance' shall mean any dispute or difference between the Employer and the Union or between the Employer and any

settled by arbitration. Union further states that "it did not contend in the Court below that Unimart was operating its new store through an *alter ego*. The Union's contention was simply and narrowly that Unimart has opened a new store and was utilizing the name of another corporation in order to operate the Unimart store, with Unimart employees, and was refusing to apply the collective bargaining agreement to such store. The Union alleged only that the new store was merely an additional location as set forth in the collective bargaining agreement."

In *Retail Clerks Union* v. *L. Bloom Sons Co.* (1959) *supra*, 173 Cal. App.2d 701, the union sought to compel L. Bloom Sons to arbitrate whether their collective bargaining contract applied to "Bloom's Salinas, Inc." which the union claimed was being operated by L. Bloom Sons. The court states: "The issue presented was, in the language of appellant's opening brief, this: 'Did L. Bloom Sons Co. Inc. operate the new store at Valley Fair Shopping Center, as it told the public of San Jose it did, and were its employees accordingly subject to the existing collective bargaining agreement? Or, was the new store controlled by a separate corporate entity sufficiently independent of L. Bloom Sons Co., Inc., to remove the operation and the employees at Valley Fair from the impact of the collective bargaining agreement?' Appellant contended in the court below, and it contends here, that this issue must be determined by arbitration. The trial court concluded that this issue was one for the court's determination, but that Bloom's Salinas, Inc., would be an indispensable party to any such determination, and finally, that such determination should be made in an action for declaratory relief rather than in this proceeding under section 1282 of the Code of Civil Procedure. It thereupon, as we have already seen, dismissed this proceeding without prejudice.

"We are in accord with the conclusions of the trial court.

"Appellant contends that the issue must be determined by the arbitrator because it involves a controversy arising out of the contract. Were appellant and respondent the only parties interested in, and to be affected by, the determination of the issue, appellant's contention would be well founded.

---

employee covered by this Agreement concerning the application or interpretation of any provision of this Agreement. . . ."

Section D of said Article XII sets forth the "Grievance Procedure" designated as Step 1 and Step 2, and in Section E thereof it is provided: "If a grievance is not satisfactorily adjusted in Step 2, either party may submit the grievance to arbitration for final determination by notifying the other party in writing no later than fifteen (15) days after the grievance was taken up in Step 2 that it desires to arbitrate same." It is then provided in Section F that the parties shall select an impartial arbitrator within five days after receipt of the written demand for arbitration by the other party, and sets forth the procedure for the selection of the arbitrator if the parties are unable to agree.

But the controversy involves more than that; it involves the rights and interests of Bloom's Salinas, Inc., as well. It is conceded that respondent and Bloom's Salinas, Inc. are separately incorporated. Bloom's Salinas, Inc., is not a party to the contract. It did not consent to have this issue decided by an arbitrator rather than by a court of competent jurisdiction. Appellant is, in effect, urging the patently absurd proposition that two parties can by contract effectively stipulate for the mode of determination of the rights of a third party who has not only not assented to such a mode of determination but who also is not even accorded an opportunity to participate in such determination. However, appellant maintains that Bloom's Salinas, Inc., is but the *alter ego* of respondent, that it has no identity apart from respondent, and that therefore the contract of respondent is, in reality, also the contract of Bloom's Salinas, Inc. Appellant begs the question. It must first be determined whether Bloom's Salinas, Inc., is in fact but the *alter ego* of respondent. . . . The proper forum for that determination is, of course, a court of law."

The consensual nature of arbitration was again noted in *Retail Clerks Union v. Thriftimart, Inc.* (1963) 59 Cal.2d 421 [30 Cal.Rptr. 12, 380 P.2d 652]. There, a dispute arose as to whether the collective bargaining contract between the Union and Thriftimart, Inc. covered the employees of a wholly owned corporate subsidiary known as MORE. Thriftimart agreed with the Union to submit to arbitration (1) the question of arbitrability and (2) the issue on the merits. The arbitrator found the issue arbitrable, and on the merits found that the parties to the contract intended it to apply to any new location and that MORE'S stores were such new locations within the meaning of the contract. The Union obtained a judgment confirming the award from which Thriftimart and MORE (which had intervened in the confirmation proceedings) appealed. The court states (pp. 425-426): "The question is one of federal law. [Citations.] Local 770 "contends that the *Steelworkers* cases (*United Steelworkers v. Warrior & Gulf N. Co.,* 363 U.S. 574 [4 L.Ed.2d 1409, 80 S.Ct. 1347]) compel confirmation of the award and prohibit judicial review of both the issue of arbitrability and the merits of the award. This argument overlooks the premise upon which those cases rest: the consensual nature of arbitration. 'Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed so to submit. . . . The judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.' (363 U.S. at p. 582 [4 L.Ed.2d at p.1417].)

"In the *Steelworkers* cases, the Supreme Court sought to insulate consensual labor arbitration from judicial intervention. The arbitrator's decision on the merits is not to be disturbed, 'even through the back door of interpreting the arbitration clause . . .' (363 U.S. at p. 585 [4 L.Ed.2d at p.

1419]), for it was the arbitrator's judgment of what the parties agreed to that was bargained for. In the present case, however, MORE was not a party to the collective bargaining contract and did not join the submission of the controversy to the arbitrator. Thus, the crucial issue is whether there can be a valid arbitration award in the absence of a party directly affected by the award. The substantive federal law of collective bargaining agreements affords no solution to this question. 'Until it is elaborated by the federal courts we assume it does not differ significantly from our own law.' [Citation.]" The court then quotes with approval from the *Bloom* case and concludes that, since MORE was not a party to the contract and did not agree to the submission, it was not bound. The judgment was reversed and the trial court was directed to vacate the award of the arbitrator pursuant to section 1286.2, subdivision (d) of the Code of Civil Procedure.

We cannot agree with the Union's contention that the *Thriftimart* and *Bloom* cases are inapplicable to the instant case. ■ Arbitration is a matter of contract (Code Civ. Proc., §§ 1281, 1281.2; *O'Malley* v. *Wilshire Oil Co.*, 59 Cal.2d 492, 480-491 [30 Cal.Rptr. 452, 381 P.2d 188]; *Berman* v. *Renart Sportswear Corp.*, 222 Cal.App.2d 385, 388-389 [35 Cal.Rptr. 218]) and, in spite of the strong policy in its favor, an employer cannot be compelled to arbitrate if the arbitration agreement is not binding upon it. ■ Accordingly, an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings. ■ Whether or not the arbitration provisions are operative against a party who has not signed the arbitration agreement (Two Guys) depends upon the status of such party and its relation to the party-employer who signed the agreement (Unimart). This involves a question of "substantive arbitrability" which is to be determined *by the court*.

We find nothing in the national labor policy which abrogates these fundamental principles which were applied in *Thriftimart* and *Bloom*. As pointed out in the *Thriftimart* case (59 Cal.2d at p. 426) the *Steelworkers* cases rested upon the consensual nature of arbitration. ". . . [A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347].)[3]

---

[3]While this court is not concerned with the merits of the controversy, it is appropriate to point out that the principles of law governing ordinary contracts may be subordinated to the preference of national labor policy for arbitration and inapplicable to a collective bargaining agreement. Thus, a third party who has not signed a collective bargaining agreement may nevertheless be under a duty to arbitrate under its provisions, depending upon the underlying facts and circumstances with regard to the employment relationship as a whole. See discussion in *John Wiley & Sons* v.

In *John Wiley & Sons* v. *Livingston,* 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903, 84 S.Ct. 909], the question was whether an arbitration agreement was binding on a successor corporation. The court states: "The threshold question in this controversy is who shall decide whether the arbitration provisions of the collective bargaining agreement survived the Wiley-Interscience merger, so as to be operative against Wiley. Both parties urge that this question is for the courts. Past cases leave no doubt that this is correct. 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' *Atkinson* v. *Sinclair Refining Co.,* 370 U.S. 238, 241 [8 L.Ed.2d 462, 465, 82 S.Ct. 1318]. Accord, e.g., *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347]. The problem in those cases was whether an employer, concededly party to and bound by a contract which contained an arbitration provision, had agreed to arbitrate disputes of a particular kind. Here, the question is whether Wiley, which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all by the agreement's arbitration provision. The reason requiring the courts to determine the issue is the same in both situations. The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." Having determined that the question of arbitrability was one for the court to decide, the court proceeded to the merits. Wiley had objected to arbitration upon the ground that it never was a party to the collective bargaining agreement. The Union argued that Wiley, as successor to Interscience, was bound by the latter's agreement, at least sufficiently to require it to arbitrate. With regard to these arguments, the court states (pp. 549-550 [11 L.Ed.2d at pp. 904-905]): "The preference of national labor policy for arbitration as a substitute for tests of strength between contending forces could be overcome only if other considerations compellingly so demanded. While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract. '. . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . .

" 'The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular

---

*Livingston, infra,* 376 U.S. 543, 549-550 [11 L.Ed.2d 898, 904-905, 84 S.Ct. 909]; cf. *Carey* v. *Westinghouse Electric Corp.,* 375 U.S. 261, 265 [11 L.Ed.2d 320, 324, 84 S.Ct. 401].

industry or of a particular plant.' *Warrior & Gulf, supra,* 363 U.S. at pp. 578-579 [4 L.Ed.2d at p. 1415] (footnotes omitted). Central to the peculiar status and function of a collective bargaining agreement is the fact, dictated both by circumstance . . . and by the requirements of the National Labor Relations Act, that it is not in any real sense the simple product of a consensual relationship. Therefore, although the duty to arbitrate, as we have said . . . must be founded on a contract, the impressive policy considerations favoring arbitration are not wholly overborne by the fact that Wiley did not sign the contract being construed. This case cannot readily be assimilated to the category of those which there is no contract whatever, or none which is reasonably related to the party sought to be obligated. There was a contract, and Interscience, Wiley's predecessor, was a party to it. We thus find Wiley's obligation to arbitrate this dispute in the Interscience contract construed in the context of a national labor policy.

"We do nct hold that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives. As indicated above, there may be cases in which the lack of any substantial continuity of identity in the business enterprise before and after a change would make a duty to arbitrate something imposed from without, not reasonably to be found in the particular bargaining agreement and the acts of the parties involved." The Supreme Court affirmed an order directing arbitration, but only after it had determined that there was sufficient relevant similarity and continuity of operation across the change in ownership to require the successor employer to arbitrate with the union under the agreement. See also, *Local 464, American Bakery & Confectionery Workers* v. *Hershey Chocolate Corp.,* 266 F.Supp. 276; *Procter & Gamble Independent Union* v. *Procter & Gamble Mfg. Co.,* 312 F.2d 181, 184; *Livingston* v. *Gindoff Textile Corp.,* 191 F.Supp. 135, 137; *Office Emp. Intl. Union, Local 153* v. *Ward-Garcia Corp.,* 190 F.Supp. 448, 449; *Las Vegas Local Joint etc. Workers & Bartenders* v. *Las Vegas Hacienca, Inc.,* 383 F.2d 667; *Orion Shipping & Trading Co.* v. *Eastern States Petroleum Corp.,* 312 F.2d 299, 300-301.

In the instant case, respondent court did not determine whether Two Guys-San Bernardino, Inc. was owned, operated or controlled by Unimart, nor could it do so in the absence of Two Guys. (*Retail Clerks Union* v. *L. Bloom Sons Co., supra,* 173 Cal.App.2d 701, 703.) Rather, the court directed that the issue be determined by the arbitrator. In this, as demonstrated by the above cited cases, the court was in error. The present record reveals conflicting allegations, thus presenting a question which must be decided by the court in an appropriate proceeding on the basis of a factual determination.

The Union contends that its dispute is only with Unimart; that it concerns

only a violation of the existing collective bargaining agreement between the parties by Unimart's refusal to apply its provisions to its new store. This contention is answered in the *Bloom* case. Here, as there, the controversy involves the rights and interests of a third party who is not a party to the agreement and who has not agreed to submit the dispute to an arbitrator rather than a court of law. Whether the agreement may be applied to such third party is the factual question yet to be decided in a proper court proceeding and not by the arbitrator.

The Union also presents an argument based upon the provisions of Section 1280 of the Code of Civil Procedure, enacted in 1961. This section contains various definitions, and in subdivision (e) thereof it is provided: " 'Party to the arbitration' means a party to the arbitration agreement:" There then immediately follows a series of three subdivisions numbered 1 through 3, as follows: "(1) Who seeks to arbitrate a controversy pursuant to the agreement; (2) Against whom such arbitration is sought pursuant to the agreement; or (3) Who is made a party to such arbitration by order of the neutral arbitrator upon such party's application, upon the application of any other party to the arbitration or upon the neutral arbitrator's own determination." It is contended that the provisions of subdivision (3), read in conjunction with the notice provisions of Section 1282.2 of the Code of Civil Procedure,[4] make it "readily evident that the legislature had corrected the faults with notice to parties which had caused the court to dismiss the petition to compel arbitration in the *Bloom* case." It is further argued: "Accepting the plain holding of the *Bloom* and *Thrifti-mart* cases that notice must be given to third persons, when the subject of an arbitration between the employer and a Union is the employees of that third non-contracting person, there is still no reason for denying the present petition to compel arbitration," the essence of this argument being that the arbitrator may cause notice to be sent to Two Guys, and if the arbitrator fails to do so "then the Union will see that such notice is given."

■ It would appear that the Union in its discussion of section 1280, subdivision (e) is attempting to apply subdivision (3) thereof, by itself, without regard to the preceding language of the statute. General rules of construction do not permit subdivision (3) to be taken from its setting and viewed apart from the remainder of the statute. It is not a complete sentence in itself and must be read in context with direct reference to the opening phrase, thus giving effect to each and all of the provisions of the statute.

---

[4] Code of Civil Procedure section 1282.2 provides: "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by all parties thereto: (a) The neutral arbitrator shall appoint a time and place for the hearing and cause notice thereof to be served personally or by registered . . . mail on the parties to the arbitration . . . ."

(*People* v. *Rankin,* 169 Cal.App.2d 150, 157 [337 P.2d 182]; *City of Coronado* v. *San Diego Unified Port Dist.,* 227 Cal.App.2d 455, 467 [38 Cal.Rptr. 834]; 45 Cal.Jur.2d, § 117, p. 626.)

So construed, the statute defines a "party to the arbitration" as *a party to the arbitration agreement* who is made a party to such arbitration by the order or notice as provided in subdivision (3). While the meaning and purpose of subdivision (3) is not clear, we do not believe that the Legislature intended to authorize compulsory arbitration by the simple act of giving notice. It is our conclusion that section 1280, subdivision (e) (3) does not give the arbitrator or a party to the arbitration the power to join a stranger. This is not to say that there may not be voluntary joinder or interpleader.

Let a peremptory writ of mandate issue requiring respondent court to annul and set aside its order of May 29, 1969, directing arbitration.

Roth, P. J., and Wright, J., concurred.