[Civ. No. 26228. Fourth Dist., Div. One. Feb. 24, 1983.]

GARDEN GROVE COMMUNITY CHURCH OF THE REFORMED CHURCH IN AMERICA, Plaintiff and Respondent, v. PITTSBURGH-DES MOINES STEEL COMPANY et al., Defendants and Appellants.

COUNSEL

Irell & Manella, Richard H. Borow, Richard M. Sherman, Jr., and Scott D. Baskin for Defendants and Appellants.

Gibson, Dunn & Crutcher, John H. Sharer, Fred G. Bennett and Robert W. Loewen for Plaintiff and Respondent.

OPINION

WORK, J.—Pittsburgh-Des Moines Steel Company (PDM) appeals a judgment staying its pending arbitration with Garden Grove Community Church of the Reformed Church in America (Church) and denying Church's request the PDM arbitration be judicially consolidated with its arbitrable indemnification claims against third parties which arise from the facts underlying its dispute with PDM. For the following reasons, we hold it was error to refuse to consolidate separate arbitrations between the Church and each of several parties with whom it separately contracted for work on a common project where the disputes must necessarily be resolved upon common factual determinations. In reaching this conclusion, we determine language within the various Church contracts purporting to limit the consolidation of individual arbitrations does not preclude court-ordered coordination of these separate arbitrations within a single fact finding hearing.

*Factual and Procedural Background*

For purposes of this opinion, we rely solely on facts developed and supported by the trial record. Where the record contains evidence to support the trial court's findings, we accept them as true. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 163]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, pp. 4225-4226.)

The Church decided to build a structure now known as the "Crystal Cathedral" and hired C. L. Peck as project construction manager. The Church

separately contracted with Johnson/Burgee to serve as project architect. Johnson/Burgee in turn hired Severud-Perrone-Szegezdy-Sturm (Severud) as structural engineer. In yet another separate agreement, the Church contracted directly with PDM to do substantial construction work on the edifice. The Church now had separate, direct contractual relationships with Peck, Johnson/ Burgee and PDM, but no direct relationship with Severud.

The Church's contract with PDM included the following provisions regarding arbitration: "Notwithstanding the fact that a dispute, controversy or question shall have arisen in the interpretation of any provision of this Contract, the performance of any work, the delivery of any material, the payment of any moneys to Contractor, or otherwise, the Contractor agrees that it will not directly or indirectly stop or delay the Trade Contract Work, or any part thereof, or stop or delay the delivery of any materials on its part required to be furnished hereunder, pending the determination of such dispute or controversy, regardless of whether such dispute, controversy or question is or may be subject to arbitration.

". . . . . . . . . . . . . . . . . . . . .

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, provided that any award must be based upon the terms herein and the rules of law applicable to the facts of such dispute[,] . . . *[p]rovided, however, that Owner shall not be obligated to arbitrate any such claim, dispute, or other matter, if Owner, in order to fully protect its interests, desires in good faith to bring in or make a party to any such claim, dispute, or other matter, the Construction Manager, the Architect, or any other third party who has not agreed to participate in and be bound by the same arbitration proceeding.*" (Italics added.)[1] We refer to the clause, italicized above, as the "escape clause."

The contracts between the Church and Peck and between the Church and Johnson/Burgee also contained arbitration clauses. The Johnson/Burgee con-

---

[1]Although this language appears to be integral to a printed form, standard contract, PDM does not argue its effect may be avoided under a theory of contractual adhesion. (See *Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 107-108 [186 Cal.Rptr. 740]; *Graham* v. *Scissor Tail, Inc.* (1981) 28 Cal.3d 807, 817-828 [171 Cal.Rptr. 604, 623 P.2d 165].)

tract included the following limitation: "No arbitration, arising out of, or relating to this Agreement, shall include, by consolidation, joinder or in any other manner, any additional party not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by all the parties hereto."

A number of disputes arose between the Church and PDM in which PDM claimed a right to payment for cost overruns, as well as a balance due under the original contract. Peck, the Church's sole agent for the purpose of enforcing its agreement with PDM, at various times during the course of the construction assured PDM its claims would be carefully reviewed in good faith and, if necessary, they would be arbitrated according to the contract. On April 2, 1980, Peck wrote PDM: "It is my opinion that arbitration is the only way to settle our differences." In another letter dated April 17, 1980, Peck wrote to PDM: "This matter is so complex that the only useful procedure for its settlement would be arbitration which is a remedy prescribed by contract."

When PDM's claims were rejected, it instituted arbitration proceedings against the Church pursuant to their contract. The arbiter rejected the Church's objection its "escape clause" precluded arbitration because it desired to resolve its potential claim for indemnity against Johnson/Burgee, Peck and Severud at the same time.

The bulk of PDM's claim (approximately $3.5 million) involves purported conduct of Peck, Johnson/Burgee, and/or Severud allegedly causing cost overruns to PDM, including unnecessary and expensive modifications of construction plans, delays in delivering shop drawings to PDM, and mistakes in delivering shop drawings causing expensive delays in the work for PDM.[2] Assuming PDM's allegations are correct, the Church's liability to PDM on these claims is derivative through the acts of its contractors, Peck and Johnson/Burgee, and possibly of Severud, a subcontractor of Johnson/Burgee.

After arbitration proceedings commenced, the Church repeatedly asked Peck, Johnson/Burgee and Severud to join as parties to the PDM arbitration so its potential rights to indemnification could be simultaneously resolved. A draft agreement for consolidated arbitration was circulated; however, when Johnson/

---

[2]However, PDM also claims the Church still owes $400,000 on the original contract price, an issue involving no third parties.

Burgee and Severud refused to join as parties, the Church sued to stay arbitration, or alternatively for an injunction requiring Johnson/Burgee and other relevant parties to join the PDM arbitration under the provisions of Code of Civil Procedure section 1281.3.[3] The court ordered the arbitration stayed, finding the Church's "escape clause" prevented arbitration because the Church could not include third parties it believed in good faith were necessary to protect its interests. The trial court's findings of fact and conclusions of law do not deal directly with arguments that, under federal or state law, the trial court should order the Church-Peck and the Church-Johnson/Burgee indemnification disputes consolidated. However, the court found no contractual relationship existed between the Church and Severud, and concluded: "Johnson/Burgee and Severud have no obligation to participate in or be bound by the PDM arbitration and, absent their consent, may not be compelled to participate in or be bound by the PDM arbitration."

■ THE CHURCH IS NOT OBLIGATED TO ARBITRATE WITH PDM ABSENT CONSOLIDATION OF THE CHURCH-JOHNSON/BURGEE ARBITRATION

■ PDM initially contends it was for the arbiter, and not the court, to determine the applicability of the escape clause. The parties disagree on whether this jurisdictional issue is to be decided under state or federal law, although each contends the law favors its position. We conclude, as explained *infra,* California law applies because the parties specifically agreed the law of the construction site—i.e., California—would control. Regardless of which law is applied, the issue is one for judicial decision because it pertains to whether the parties have agreed to arbitrate the dispute in question. (See, e.g., *Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 567-568 [4 L.Ed.2d 1403, 1406-1407, 80 S.Ct. 1343]; *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341]; see § 1281.2.)

■ The trial court findings the Church sought in good faith to join the other parties to protect its interests and two of those parties refused to join and be bound by the arbitration are supported by the record. (However, as explained *infra,* Severud was not a *necessary* party.) The Church's concern is understandable. The bulk of PDM's claims relate to alleged wrongdoing by

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

Peck, Johnson/Burgee and PDM were named defendants. Peck has always agreed to consolidate the Church's claim of indemnity against him, with the PDM-Church arbitration. Johnson/Burgee appeared and argued against the motion to consolidate.

Peck, Johnson/Burgee and/or Severud. Assuming, arguendo, PDM's claims are correct, the Church may seek indemnity from Peck and Johnson/Burgee for liability caused by their acts. If it is forced to arbitrate separately with PDM, the Church faces the danger of being trapped by conflicting findings in separate proceedings. The arbiter in the PDM proceeding could find the Church vicariously liable to PDM, while, in a separate proceeding in which the findings from the first arbitration would not be binding, another fact-finder could find Peck and Johnson/Burgee had done nothing wrong, and owed nothing to the Church. The danger of such prejudice is apparent.

The trial court correctly found the Church properly exercised its contractual right to avoid *separate* arbitration with PDM.

■ THE TRIAL COURT'S FINDING THE CHURCH IS NOT ESTOPPED TO RELY ON THE "ESCAPE CLAUSE", IS SUPPORTED BY SUBSTANTIAL EVIDENCE

PDM argues Peck, acting as the Church's agent, promised arbitration on several occasions and as a matter of law the Church is now bound to arbitrate separately with PDM.

This argument fails for two reasons. First, there is sufficient evidence supporting the trial court's finding Peck's representations did not waive the Church's rights under the escape clause in its arbitration agreement with PDM. Most of Peck's assurances to PDM regarding arbitration refer to the contract which PDM knew contained the "escape clause." Second, the record contains no evidence PDM detrimentally relied on Peck's statements. PDM's claim it performed extra work on Peck's assurances the dispute would be settled by arbitration is not supported in the record.[4]

■ THE CHURCH-JOHNSON/BURGEE AND CHURCH-PECK INDEMNIFICATION DISPUTES SHOULD BE ARBITRATED IN PROCEEDINGS COORDINATED WITH THE PDM-CHURCH ARBITRATION

Church claims the "escape clause" applies because it cannot compel all parties necessary to "fully protect its interests," to arbitrate the indemnification

---

[4]There are only conclusionary allegations in pretrial correspondence to the effect PDM would have ceased work before completion except for Peck's entreaties.

issues in joint proceedings to insure all will be resolved upon consistent factual findings.

*Severud*:

Severud is not a necessary party to determine whether Church is liable to PDM. Further, while some portion of PDM's claims may stem from Severud's negligent acts, it is Johnson/Burgee, Severud's principal, to whom the Church must look for indemnity. No direct contractual relationship exists between Severud and the Church.[5] It is Severud's principal, Johnson/Burgee, who would be liable to the Church for Severud's acts, just as the Church may be liable to PDM for Johnson/Burgee's misconduct.

*Peck*:

The parties assume Peck's willingness to join the arbitration. Peck repeatedly assured PDM arbitration would proceed under the contract. Peck knew of the "escape clause"—it is conceded, whatever else Peck's agency relationship with the Church may or may not have included, it was his duty to "enforce" that contract. Having suggested and encouraged arbitration "according to the contract," Peck cannot equitably make himself a barrier to arbitration under its terms.

*Johnson/Burgee*:

Requiring the architect to enter into a consolidated arbitration proceeding with PDM, the Church and Peck poses a more difficult question. If, as the Church contends, its contract with Johnson/Burgee prevents their disputed claims against each other from being resolved in consolidated proceedings, the order staying arbitration is proper because the Church has not contracted to arbitrate separately with PDM under such circumstances and it would be manifestly unjust to force the Church to do so. If, however, PDM is correct in arguing Johnson/Burgee can be judicially required to arbitrate its disputes with the Church in consolidated arbitration, the "escape clause" does not apply.

The trial court's findings and conclusions reflect its assumption section 1281.3 does not empower it to require Johnson/Burgee to submit to consolidated arbitration over objection. However, section 1281.3 specifically em-

---

[5] The Church now alludes to a direct action against Severud being legally possible under the rationale of *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60]. It does not, however, make any factual showing and made no such contention below.

powers the court to order nonconsensual consolidations. ■ The court below merely observed the contract between the Church and Johnson/Burgee contained a limitation stating an arbitration could not be consolidated to include other parties without the consent of Johnson/Burgee, without addressing the contention it has statutory authority to order consolidated arbitrations *notwithstanding* these contractual provisions and Johnson/Burgee's objections. We do so now.

■ We are again faced with a question raised earlier: Is this case controlled by federal law (Fed. Rules Civ. Proc., rules 81(a)(3) and 42(a), 28 U.S.C.; 9 U.S.C. § 1 et seq.), or by state law (§ 1281 et seq.)? The Federal Arbitration Act by its terms applies to all commercial agreements involving interstate commerce; thus, on the face of it, it would appear federal law controls. However, in this case the parties agreed by contract to be governed by the law of the construction site, California. While California courts have held the Federal Arbitration Act (FAA) applies to California cases involving contracts of interstate commerce, we have not found any cases applying it where the parties committed to be governed by state law. In the face of such a choice of laws provision, California law applies unless preempted by the FAA.

■ By adopting section 1281.3,[6] California has manifested a strong policy favoring consolidating arbitrations involving common issues of law and fact. There are at least three important aims of this policy: the efficient settling of private disputes, judicial economy, and the avoidance of contrary results. ■ We see no conflict between the means the Legislature has chosen to effect this policy—giving the trial court discretion to order consolidated arbitration—and the federal scheme of regulation embodied in the FAA. Nor do we

---

[6]Section 1281.3 provides: "A party to an arbitration agreement may petition the court to consolidate separate arbitration proceedings, and the court may order consolidation of separate arbitration proceedings when:

"(1) Separate arbitration agreements or proceedings exist between the parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and

"(2) The disputes arise from the same transactions or series of related transactions; and

"(3) There is common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators.

"If all of the applicable arbitration agreements name the same arbitrator, arbitration panel, or arbitration tribunal, the court, if it orders consolidation, shall order all matters to be heard before the arbitrator, panel, or tribunal agreed to by the parties. If the applicable arbitration agreements name separate arbitrators, panels, or tribunals, the court, if it orders consolidation, shall, in the absence of an agreed method of selection by all parties to the consolidated arbitration, appoint an arbitrator in accord with the procedures set forth in Section 1281.6.

"In the event that the arbitration agreements in consolidated proceedings contain inconsistent provisions, the court shall resolve such conflicts and determine the rights and duties of the various parties to achieve substantial justice under all the circumstances.

"The court may exercise its discretion under this section to deny consolidation of separate arbitration proceedings or to consolidate separate arbitration proceedings only as to certain issues, leaving other issues to be resolved in separate proceedings."

believe Congress intended the FAA to preclude individual parties from contracting for their choice of law.

Section 1281.3 is an apparent legislative response to the holding in *Atlas Plastering, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 63, 66-67 [140 Cal.Rptr. 59], that California courts lacked authority to consolidate arbitrations and order them to proceed on terms different than those agreed upon by the parties.

Like the *Atlas Plastering* decision, the Church-Johnson/Burgee contract arose before section 1281.3 was enacted, not in response to its provisions. Unlike the court's concern in *Atlas Plastering,* coordinating the arbitrations here will not force any party to forego contractual rights to specifically select the arbiter who ultimately decides its fate. In *Atlas Plastering,* it was this element, not consolidation per se, which the court found dispositive. (*Id.,* at pp. 70-73.) Here, each arbitration agreement is to proceed in accord with the "Construction Industry Arbitration Rules of the American Arbitration Association then obtaining."

 Where no substantive or substantial procedural contractual rights or obligations are affected, section 1281.3 permits consolidation of arbitrations arising out of contracts predating enactment of the statute. (*Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc.* (1980) 111 Cal.App. 3d 983, 992 [169 Cal.Rptr. 102].) The statute also eliminates the *Atlas Plastering* concern for identity of arbiter selection procedures. "[I]f the agreements do not mesh in their description of procedure, a court has authority to appoint an arbitrator, and to 'resolve [conflicts among the agreements] and determine the rights and duties of the various parties to achieve substantial justice under all the circumstances.' Thus, a party may be forced into a coordinated arbitration proceeding in a dispute with a party with whom he has no agreement, before an arbitrator he had no voice in selecting and by a procedure he did not agree to." (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 603, 612 [183 Cal.Rptr. 360, 645 P.2d 1192].)

 Binding arbitration is favored judicially and by public policy to promote judicial efficiency, and to settle disputes quickly and fairly. (See, e.g., *Revere Copper & Brass* v. *Overseas Private Inv.* (D.C. Cir. 1980) 628 F.2d 81, cert. den. 446 U.S. 983 [64 L.Ed.2d 839, 100 S.Ct. 2964]; *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397]; *Keating* v. *Superior Court, supra,* 31 Cal.3d 584.) The importance of obtaining consistent results in disputes involving identical facts and law strongly supports consolidating evidence taking in arbitrations such as this.

 The three explicit requirements for applicability of section 1281.3 are facially met: (1) separate arbitration agreements run between one party and each of the other parties to the coordinated arbitrations; (2) the disputes arise from the same transactions or series of related transactions; and (3) common issues of law or fact create the possibility of conflicting rulings by more than one arbiter or panel of arbiters. There is no reason to deny consolidation unless it would impair a substantial right or obligation of a party under the contract. (*Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc., supra,* 111 Cal.App.3d 983, 989-993.) If consolidation substantially alters Johnson/Burgee's[7] contractual rights, or results in unfair prejudice, it would not "achieve substantial justice under all the circumstances" as required by the statute, nor would its retroactive application be constitutional. However, our analysis of its agreement shows Johnson/Burgee only contracted to avoid being forced to resolve its disputes with parties other than the Church in the same arbitration in which it defends claims or pursues relief from the Church. Neither PDM nor Johnson/Burgee claim relief against the other.

The Church-Johnson/Burgee contract language being relied upon by the Church (and inferentially Johnson/Burgee) states: "[N]o arbitration arising out of, or relating to this agreement, shall include, by consolidation, joinder or in any other manner, *any additional party* not a party to this agreement except by written consent containing a specific reference to this agreement and signed by all the parties hereto. Any consent to arbitration involving an additional party or parties shall not constitute consent to arbitration of any dispute not described therein or with any party not named or described therein. This agreement to arbitrate and any agreement to arbitrate with an addition party or parties duly consented to by the parties hereto shall be specifically enforceable under the prevailing arbitration law." This language does not purport to limit the right of a court to order consolidation, it only restricts the right of either party to the agreement to force the other to engage in an arbitration to which there are multiple *parties.*

A party to an arbitration is defined in section 1280, subdivision (e) as one: "(1) Who seeks to arbitrate a controversy pursuant to the agreement;

"(2) Against whom such arbitration is sought pursuant to the agreement; or

"(3) Who is made a party to such arbitration by order of the neutral arbitrator upon such party's application, upon the application of any other party to the arbitration or upon the neutral arbitrator's own determination."

---

[7]No other relevant party is now objecting.

Here, we deal with two agreements to arbitrate, each one of which is separately arbitrable. Section 1281.3 specifically refers to coordinating separate arbitration proceedings. It does not refer to making parties whose claims are limited to resolution under only one of the arbitrations, "a party to any other arbitration" consolidated for the purposes of being heard at the same time where common facts will resolve issues in each arbitration.

Section 1281 defines a party as one involved in an arbitration hearing *who is seeking to arbitrate a controversy within the scope of the arbitration agreement to which it is a signatory*. Thus, if the PDM-Church agreement issues are resolved on evidence taken at the same hearing in which the same evidence is relied upon to resolve the arbitration issues contained in the Church-Johnson/Burgee agreement, PDM does not become a *party* to the arbitration involving Johnson/Burgee since PDM is not litigating any claim against the architect, nor is Johnson/Burgee being forced to litigate any claim against PDM. Further, Johnson/Burgee is not being forced to become a *party* to the PDM-Church arbitration to resolve the question of liability between them.[8]

That consolidation of separate arbitrations does not make a party to one a party to the other is emphasized by the language in *Grover-Dimond Assoc.* v. *American Arbitration Ass'n.* (1973) 297 Minn. 324 [211 N.W.2d 787, 64 A.L.R.3d 522]. "The architect correctly points out that the right to arbitrate is governed by contract and the parties may fashion whatever agreement they wish to limit the scope of the proceedings. In opposing joint arbitration, the architect objects to requiring a party 'to arbitrate the claims of strangers and have strangers meddle in the arbitration of claims against him.' However, no party to this litigation is being required to arbitrate its claims for or against a stranger. The owners are entitled to arbitrate their dispute with the contractor and their dispute with the architect. There is no suggestion that the architect and contractor are obliged to arbitrate their differences in that proceeding. The only question is whether the two arbitration matters demanded by the owners should be heard at the same time and place or whether they should be heard separately." (*Grover-Dimond Assoc.* v. *American Arbitration Ass'n.*, *supra*, 211 N.W.2d 787, 788.)

There is a further reason the Church is not entitled to avoid judicial consolidation because of the language in its contract with Johnson/Burgee. First,

---

[8]It is probable the restrictive language in the Church-Johnson/Burgee contract was to prevent the potential problem raised in *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039 [82 Cal.Rptr. 249], where a purported alter ego of one party to a collective bargaining agreement was ordered to become a party to arbitration under the collective bargaining agreement pursuant to section 1280, simply because the arbiter deemed that entity to be an indispensable party to the arbitration between the contracting parties. That is not the situation here.

the Church repeatedly avows its good-faith desire to proceed to arbitrate, and not to rely upon the "escape clause" in its contract with PDM if the factual resolutions based upon evidence underlying PDM's claim may be resolved consistently, and simultaneously, with factual resolutions underlying its claim for indemnification against Johnson/Burgee. Therefore, the Church (but not Johnson/Burgee) contends it is forced to rely upon the "escape clause" in the PDM contract because Johnson/Burgee relies upon the terms of its contract. with the Church to avoid consolidation. However, Johnson/Burgee submitted a declaration of its attorney stating: "Johnson/Burgee . . . decline[d] to become a party to the arbitration proceeding. The primary reason for this decision [stems] from Severud's refusal to join as a party to the arbitration. Johnson-Burgee considers Severud to be an indispensable party to the arbitration proceeding. . . . Accordingly, if Severud were not also a party to the arbitration proceeding, Johnson-Burgee would have no alternative but to file an action for indemnity against Severud in court, in light of the fact that the contract between Johnson-Burgee and Severud does not provide for arbitration in the event of a dispute. Such a procedure would involve a tremendous duplication of effort and expense, which Johnson-Burgee wishes to avoid to the fullest possible extent." This evidence shows unequivocally Johnson/Burgee did not object to consolidated arbitration on the grounds multiparties may be involved (the only concern stated in its contract), but solely because judicial coordination would not include *all* parties it believes necessary to resolve its total package of claims arising out of matters with the Church in one proceeding. In essence, it argues it is entitled to avoid coordinated arbitrations under the rationale involving the "escape clause" the Church included in its agreement with PDM. However, no such escape provision exists between the Church and Johnson/Burgee.

The order staying the pending arbitration between PDM and the Church is reversed. The matter is remanded to the superior court which shall issue its order directing the Church to institute separate arbitration proceedings for its indemnification claims against Peck and Johnson/Burgee immediately upon this opinion becoming final, said arbitrations to be consolidated with the PDM-Church arbitration pursuant to the provisions of section 1281.3, under such terms as the superior court deems appropriate.

Wiener, Acting P. J., and Moon, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 28, 1983.

---

*Assigned by the Chairperson of the Judicial Council.