[No. B046838. Second Dist., Div. Three. Dec. 13, 1990.]

AMERICAN BUILDER'S ASSOCIATION, Plaintiff and Appellant,
v.
WILLIAM AU-YANG et al., Defendants and Respondents.

**COUNSEL**

Geoffrey V. Morson, for Plaintiff and Appellant.

Raimund Freihube, Don & Lee and Jeffrey J. Don for Defendants and Respondents.

## Opinion

**KLEIN, P. J.—** ██ Plaintiff and appellant American Builder's Association (Builder's) appeals an order denying its application for a preliminary injunction for relief from arbitration.[1]

We consider whether an arbitrator exceeded his powers in ordering the joinder of a coclaimant which was not a signatory to a contract providing for arbitration.

We conclude the trial court erred in holding the arbitrator had jurisdiction to determine the nonsignatory's status. Whether the nonsignatory was an undisclosed principal so as to be properly joined in the arbitration was a question of fact for the trial court in the first instance. The order therefore is reversed and the matter is remanded.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 1988, defendants and respondents William Au-Yang and Sabrina Au-Yang (the Au-Yangs) entered into a written construction contract with Builder's, a general contractor, for the renovation of a residence at 2900 Lakeridge Drive in North Hollywood for the sum of $145,000. The contract named the Au-Yangs as the owners of the property and contained a standard arbitration clause.[2]

A dispute arose between the parties. On or about January 8, 1989, the Au-Yangs filed a demand for arbitration to institute proceedings before the American Arbitration Association (AAA). No answer or counterclaim was filed by Builder's. The proceedings commenced on July 10, 1989.

Based on the limited record before us, it appears evidence was introduced at the arbitration hearing that although the Au-Yangs were the signatories to the contract, all payments had been made by defendant and respondent

---

[1] An order granting or denying a preliminary injunction is appealable, as being within the meaning of the provision for appeals in cases involving injunctions. (Code Civ. Proc., § 904.1, subd. (f); *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 885, fns. 4, 5 [125 Cal.Rptr. 915].)

All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

[2] The arbitration clause, article 14 of the contract, states: "All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen."

Bonita Ace, Inc. (Bonita) except for the initial deposit. There was also evidence that Bonita held title to the property although the Au-Yangs were entitled to, and had possession of, the premises. The arbitrator made a factual finding the Au-Yangs had signed the contract as agents for Bonita. Therefore, the arbitrator determined the arbitration could not proceed without bringing in Bonita as a party, and ordered the Au-Yangs to join Bonita as a coclaimant in the proceeding.

The hearing was continued to September 12, 1989, and the Au-Yangs were given until August 15, 1989 to amend their demand for arbitration to include Bonita as a coclaimant. The arbitrator also set a deadline of August 25, 1989, for Builder's to file a response or counterclaim to the amended demand for arbitration. In addition, the arbitrator indicated he would consider continuing the proceedings if Builder's sought to conduct discovery on the newly joined party.

The Au-Yangs and Bonita filed an amended demand for arbitration on August 15, 1989, seeking about $72,000 in damages, including $50,000 for damages due to delay. Builder's did not file a response or counterclaim thereto, nor did it request any discovery.

Builder's objected to arbitrating a claim with Bonita, which it viewed as a stranger to the contract. At the continued hearing on September 12, 1989, Builder's contended the arbitrator had exceeded his authority in joining Bonita as a party, and it made a motion to stay the proceedings until it could obtain judicial review of that ruling. The arbitrator continued the hearing until October 5, 1989, to enable Builder's to seek relief in the superior court.

On October 3, 1989, Builder's filed a verified complaint in the superior court for damages and injunctive relief, naming the Au-Yangs, Bonita and the AAA. Builder's claimed it was owed about $6,000 for work which it had performed. In addition, Builder's sought to enjoin the named defendants from conducting an arbitration with Bonita as a party.

The trial court issued a temporary restraining order enjoining the conduct of arbitration proceedings with Bonita as a party, as well as an order to show cause re preliminary injunction.

The Au-Yangs and Bonita opposed the application for preliminary injunction, contending the trial court was without jurisdiction to decide the issue of whether Bonita was a proper party to the arbitration proceeding. They further argued: Builder's failure to challenge the arbitration agreement required the matter to be ordered back into arbitration; any basis for

disagreeing with the arbitrator's joinder decision did not constitute grounds for enjoining the arbitration; irrespective thereof, the joinder of Bonita was proper under California substantive law; and, Builder's had failed to demonstrate it would suffer hardship or irreparable harm if the arbitration were to go forward with Bonita as a coclaimant.

William Au-Yang's supporting declaration stated: in February 1988, he entered into an agreement with Bonita that for consideration, he and his family were to receive occupancy of the premises after renovation; on April 11, 1988, he entered into the remodeling contract with Builder's; in executing the contract he acted on Bonita's behalf; he and his wife paid $1,000 and Bonita paid the remaining balance, without objection by Builder's.

The matter was heard on October 18, 1989. The trial court denied the preliminary injunction, ruling: "Plaintiff failed to show that arbitrator had no jurisdiction to determine whether arbitration agreement between plaintiff and defendants Au-Yang signed by Au-Yang as principal or as agent for defendant Bonita Ace. Moreover, [the] 'all claims' language [in the arbitration clause] may be sufficient to bind plaintiff to arbitration as to any willing claimants."

Builder's appealed.

## Contentions

Builder's contends the trial court erred in denying it relief from an arbitration which included Bonita because Bonita was not a party to the arbitration agreement.

## Discussion

1. *General principles.*

 a. *Injunctive relief.*

Section 526, which specifies the grounds for issuance of an injunction, states in relevant part: "An injunction may be granted in the following cases: [¶] . . . . [¶] 2. When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action; . . ."

■ Whether a preliminary injunction shall be granted rests largely in the discretion of the trial court and will not be reversed on appeal unless

there is a manifest abuse of discretion. (*Ingrassia* v. *Bailey* (1959) 172 Cal.App.2d 117, 125 [341 P.2d 370].)

 b. *Rights of undisclosed principal.*

"An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and *all the rights* and liabilities *which would accrue to the agent* from transactions within such limit, if they had been entered into on his own account, *accrue to the principal*." (Civ. Code, § 2330, italics added.)

█ "A contract made by an agent for an *undisclosed principal* is for most purposes the contract of the principal, . . ." (*Bank of America* v. *State Bd. of Equal.* (1962) 209 Cal.App.2d 780, 796 [26 Cal.Rptr. 348], italics added.) Unless excluded by the terms of the agreement made by the agent, an undisclosed principal may claim the benefits of the contract and may sue or be sued in his or her own name. (*Schader* v. *White* (1916) 173 Cal. 441, 445 [160 P. 557]; *Cowan* v. *Tremble* (1931) 111 Cal.App. 458, 462 [296 P. 91]; *Purviance* v. *Shostak* (1949) 90 Cal.App.2d 295, 297 [202 P.2d 755]; *Sumner* v. *Flowers* (1955) 130 Cal.App.2d 672, 675 [279 P.2d 772]; *Wood Bldg. Corp.* v. *Griffitts* (1958) 164 Cal.App.2d 559, 562 [330 P.2d 847]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 110, pp. 105-106.)

█ It therefore follows that an undisclosed principal may prosecute an arbitration in his or her own name. Whether or not Bonita, a nonsignatory to the contract, was a proper coclaimant, depends upon Bonita's relationship to the Au-Yangs, the signatories.

We next consider whether Bonita's status as the Au-Yangs' principal was a factual question for the arbitrator, or whether the proper forum for that determination is a court of law.

 2. *Arbitrator exceeded his broad authority in determining Bonita's status and ordering its joinder as a coclaimant.*

 a. *General principles re arbitrator's authority.*

█ Arbitrators necessarily have expansive powers to resolve controversies presented to them for determination. Section 1282.2, subdivision (c) states: "The neutral arbitrator shall preside at the hearing, shall rule on the admission and exclusion of evidence and on questions of hearing procedure and shall exercise all powers relating to the conduct of the hearing."

■ Further, " '[a]rbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically. Under the rule of broad construction an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator himself decides which questions need to be determined.' [Citations.]" (*Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624, 627 [116 Cal.Rptr. 505, 526 P.2d 969].)

 b. *Issue of Bonita's status must be resolved by trial court and cannot be delegated to arbitrator.*

In *Retail Clerks Union* v. *L. Bloom Sons Co.* (1959) 173 Cal.App.2d 701 [344 P.2d 51], the union sought to compel L. Bloom Sons to arbitrate whether its collective bargaining contract applied to "Bloom's Salinas, Inc.", which the union claimed was being operated by L. Bloom Sons. The trial court dismissed without prejudice the union's petition to compel arbitration. It held the issue was one for the court's determination, but that Bloom's Salinas, Inc., would be an indispensable party to any such determination, and that such determination should be made in an action for declaratory relief. The union appealed, contending the status of Bloom's Salinas, Inc. should be determined by the arbitrator because it involved a controversy arising out of the contract. (*Id.*, at pp. 702-703.)

The reviewing court rejected the union's argument. It observed: "Bloom's Salinas, Inc., is not a party to the contract. It did not consent to have this issue decided by an arbitrator rather than by a court of competent jurisdiction. Appellant is, in effect, urging the patently absurd proposition that two parties can by contract effectively stipulate for the mode of determination of the rights of a third party who has not only not assented to such a mode of determination but who also is not even accorded an opportunity to participate in such determination. However, appellant maintains that Bloom's Salinas, Inc., is but the *alter ego* of respondent, that it has no identity apart from respondent, and that therefore the contract of respondent is, in reality, also the contract of Bloom's Salinas, Inc. *Appellant begs the question. It must first be determined whether Bloom's Salinas, Inc., is in fact but the alter ego of respondent.* A corporation's separate identity will be disregarded only when, and to the extent that, it is necessary so to do in order to prevent fraud or injustice. [Citations.] *The proper forum for that determination is, of course, a court of law.*" (*Retail Clerks Union, supra*, 173 Cal.App.2d at p. 703, second and third italics added.)

Similarly, in *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039 [82 Cal.Rptr. 249], the union filed a petition to compel arbitration with

Unimart under a collective bargaining agreement. The union alleged Unimart had opened a new discount store within the geographical jurisdiction of the union using the name of its sister corporation, "Two Guys," and had refused to apply the collective bargaining agreement between Unimart and the union to the new store. The trial court granted the union's petition. Unimart, in turn, filed a petition for writ of mandate to restrain further proceedings and to vacate the order. (*Id.*, at p. 1041.)

The appellate court granted Unimart's petition to prevent the arbitration from going forward. It held: "[A]n arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings. Whether or not the arbitration provisions are operative *against a party who has not signed the arbitration agreement* (Two Guys) depends upon the status of such party and its relation to the party-employer who signed the agreement (Unimart)." (*Unimart, supra*, 1 Cal.App.3d at p. 1045, italics added.) The question "must be decided *by the court* in an appropriate proceeding on the basis of a factual determination." (*Id.*, at p. 1047, italics added.)[3]

The *Unimart* court also rejected the union's reliance on section 1280, subdivision (e)(3), which provides: " 'Party to the arbitration' means a party to the arbitration agreement: [¶] . . . . [¶] (3) Who is made a party to such arbitration by order of the neutral arbitrator upon such party's application, upon the application of any other party to the arbitration or upon the neutral arbitrator's own determination." *Unimart* concluded the subdivision did not give the arbitrator or a party to the arbitration the power to join a stranger. (*Unimart, supra*, 1 Cal.App.3d at p. 1049.)

■ While these cases involve collecting bargaining agreements, the principle that a nonsignatory cannot be made a party to an arbitration absent an initial factual determination by a trial court regarding the nonsignatory's status, appears applicable to contracts generally.[4]

---

[3] Relying on *Retail Clerks Union and Unimart, Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530 [179 Cal.Rptr. 794], observed: "A *court* might, *in advance of the arbitration,* determine that a person operates [a] corporation as his alter ego, and then compel that person to defend the arbitration in his individual capacity. [Citations.]" (*Southern Cal. Pipe Trades Dist. Council No. 16, supra*, at p. 536, italics added.)

In *Southern Cal. Pipe Trades Dist. Council No. 16, supra*, 126 Cal.App.3d at page 533, Merritt signed an agreement containing an arbitration provision as an officer of his firm. The trial court confirmed an arbitration award against Merritt in his individual capacity. (*Id.*, at p. 535.) The reviewing court reversed, holding the record was insufficient to show that Merritt was a party to the arbitration or had notice that an award against him personally was being sought. (*Id.*, at p. 539.)

[4] In *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 224-225 [269 Cal.Rptr. 259] (review. den.), a sole general partner who signed an arbitration agreement on behalf of a limited partnership contended he was not bound by the agreement entered into by the limited

We are mindful that arbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically, and that an arbitrator is authorized to determine all questions necessary to resolve the controversy submitted for decision. (*Van Tassel* v. *Superior Court, supra,* 12 Cal.3d at p. 627.) ▮ However, "judicial enthusiasm for alternative methods of dispute resolution 'must not in all contexts override the rules governing the interpretation of contracts[,]' as the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. (*Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 738-739 [222 Cal.Rptr. 1, 710 P.2d 833].)" (*Coopers & Lybrand* v. *Superior Court* (1989) 212 Cal.App.3d 524, 537 [260 Cal.Rptr. 713].)

▮ Therefore, notwithstanding an arbitrator's broad authority to resolve questions presented by a controversy, an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. (*Unimart, supra,* 1 Cal.App.3d at p. 1045.) The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance.[5]

If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented and would be without effective review. ▮ While a court will vacate an arbitration award if the arbitrators exceeded their powers, courts may not examine the *sufficiency* of the evidence supporting the award. (§ 1286.2; *Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 437 [114 Cal.Rptr. 909].)[6] Thus, if Builder's were to bring a motion to vacate the

---

partnership. The *Keller* court held that because a general partner is an agent of the limited partnership and is a beneficiary of any agreement entered into on behalf of the partnership, the relationship between a sole general partner and a limited partnership is such that the general partner is bound by an agreement to arbitrate disputes entered into by the partnership. (*Id.,* at pp. 228, 229.) *Keller* did not address which forum should determine the existence of an agency relationship in the first instance in the event there is a factual dispute as to that issue.

[5] *Coopers & Lybrand* presented an issue as to whether an independent auditor was entitled to arbitral immunity. (§ 1280.1.) In view of the necessity for a voluntary agreement to arbitrate, a contractual provision for a binding audit required a factual determination *by the trial court* as to whether the parties intended the audit to constitute an arbitration so as to confer immunity upon the auditor. (*Coopers & Lybrand, supra,* 212 Cal.App.3d at p. 539.)

[6] Section 1286.2 provides an award may be vacated "if the court determines that: [¶] (a) The award was procured by corruption, fraud, or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the

award asserting the arbitrator had exceeded his powers in ordering joinder due to insufficient evidence to support a finding that Bonita was the Au-Yangs' principal, the trial court, constrained by the limited grounds set forth in section 1286.2, would decline to review the arbitrator's factual finding.

In sum, the trial court here erred in holding the arbitrator had jurisdiction to determine the factual issue of Bonita's relationship to the Au-Yangs. That question "must be decided by the court in an appropriate proceeding on the basis of a factual determination." (*Unimart, supra,* 1 Cal.App.3d at p. 1047.) Assuming Bonita is determined to be the Au-Yangs' principal, Bonita properly will be made a party to the arbitration.

### DISPOSITION

The order is reversed and the matter is remanded to the trial court for Builder's to file an amended complaint setting forth a cause of action for declaratory relief as to Bonita's status, and for further proceedings consistent with this opinion.

Respondents' request for sanctions is denied. Each party to bear respective costs.

Danielson, J., and Hinz, J., concurred.

---

refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."