[No. G026036. Fourth Dist., Div. Three. June 24, 2002.]

JOSEPH V. DELANEY, Plaintiff and Appellant, v.
MILFORD W. DAHL, JR., et al., Defendants and Respondents.

648

COUNSEL

O'Neill, Lysaght & Sun, Brian C. Lysaght, Brian D. Hershman and Robert L. Meylan for Plaintiff and Appellant.

Corbett & Steelman, Ken E. Steelman and David F. Brown for Defendants and Respondents.

OPINION

**FYBEL, J.**—Joseph V. Delaney appeals from a judgment on a binding arbitration award. We affirm because (1) the arbitrator had authority to award attorney fees against Delaney in the arbitration, (2) the arbitrator

could amend the final arbitration award to add Delaney's name to the disposition section, and (3) the amendment to add Delaney's name was timely.

The arbitrator, in considering whether to award attorney fees against Delaney, interpreted the parties' contract and considered evidence presented at the arbitration hearing. The arbitrator decided attorney fees should be awarded against Delaney. Following *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*) and *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*), the trial court properly deferred to the arbitrator's decision.

Amendment of a final arbitration award is permitted if an issue is omitted from the award due to the arbitrator's inadvertence or mistake, the amendment is consistent with other findings on the merits, and the amendment does not cause demonstrable prejudice to any party's legitimate interests. (*A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1478 [83 Cal.Rptr.2d 449] (*A.M. Classic*).) We agree with *A.M. Classic* and *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 881 [103 Cal.Rptr.2d 605] (*Century City Medical Plaza*), in their (1) establishment of the foregoing standards for amendments, and (2) recognition of the difference between *corrections* under Code of Civil Procedure section 1284, and *amendments.* All of these standards were met in this case and the amendment to add Delaney's name was proper.

*A.M. Classic* also held an amendment must be made before judicial confirmation of the arbitration award. We follow *A.M. Classic* and conclude the amendment in this case was timely because it was made prior to judicial confirmation. We decline to apply the additional time requirements imposed on amendments by *Century City Medical Plaza.*

## FACTS

### The Underlying Litigation

Delaney was an officer and director of American Patriots, Inc. (American Patriots), which was the parent company of Catalina Toys, Inc. (Catalina). Catalina held the right to manufacture a toy doll named Cheerful Tearful. Catalina contracted with Forward Winsome Industries, Ltd. (Forward Winsome) to manufacture Cheerful Tearful in Hong Kong. A dispute arose between Catalina and Forward Winsome. American Patriots and Catalina retained Rutan & Tucker, LLP, and Milford W. Dahl, Jr. (collectively

Rutan), to represent them against Forward Winsome and signed a retainer agreement dated March 27, 1992.

The retainer agreement contained the following language regarding the payment of attorney fees and the resolution of fee disputes between American Patriots and Catalina, on the one hand, and Rutan on the other: "Our clients specifically consist of Catalina Toys, Inc. and American Patriots, Inc. ('clients'). Potentially the other shareholders of Catalina Toys, Inc. could become involved in this case either as defendants, plaintiffs and/or cross-defendants and/or cross-complainants. Initially we are not representing any of the individual shareholders. If a necessity to represent them arises, we will have to discuss whether there are any conflicts of interest and, if so, whether they can or should be waived. The two clients, Catalina Toys, Inc. and American Patriots, Inc. agree that they are individually, jointly and severally responsible for payment of Rutan & Tucker's entire bill for services rendered and costs. [¶] . . . [¶]

"If any dispute arises between clients and Rutan & Tucker regarding services, quality or quantity of work or billings, or any other matter relating to the provisions or duties under this agreement, such dispute shall be submitted to binding arbitration. Fee disputes shall be arbitrated according to guidelines and standards adopted by the State Bar of California, if any, then in effect. Any other disputes shall be arbitrated according to the arbitration rules of the Orange County Bar Association, if any, then in effect and, if there are no such rules in effect, then in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding. The arbitrator shall have the discretion to order the losing party to reimburse the prevailing party for all costs and fees incurred with the arbitration, including attorneys' fees and the arbitrator's fees.

"In the event attorneys' fees and related costs are incurred to enforce this agreement or to resolve a dispute under this agreement, the prevailing party shall be entitled to recover, in addition to damages allowed by law, reasonable attorneys' fees and costs."

Representing American Patriots and Catalina, Rutan filed a lawsuit against Forward Winsome. Forward Winsome cross-complained against American Patriots, Catalina, Delaney, and Donald Yu, Catalina's president (collectively the Catalina parties). Rutan eventually became counsel for Delaney and Yu, as well as American Patriots and Catalina. The Catalina parties signed a supplemental retainer agreement dated October 10, 1994, which included a paragraph addressing the topic of "fees" that Delaney interlineated before signing. The paragraph read as follows (Delaney's

additions are indicated by brackets): "Our fees will continue to be charged on an hourly basis for all time actually expended and will be generally billed monthly with payment due within 30 days of the date of the bill. It is my understanding that corporations are providing this defense free of charge to Mr. Yu [and Mr. Delaney] and, therefore, by signing this retainer agreement Mr. Yu [and Mr. Delaney] is [*sic*] not agreeing to pay Rutan & Tucker." Delaney deleted the following sentence: "Although our agreement has been directly with the corporations, Mr. Delaney has indicated he will assure payment to Rutan & Tucker in the event the corporations are unable to pay us."

The supplemental retainer agreement also stated: "This letter and the letter of March 27, 1992 together shall constitute the entire agreement between Rutan & Tucker and clients with respect to this matter." Above the clients' signatures was an acknowledgement stating, among other things, "We have read and understand the entire agreement including the discussions concerning the firm's disclosure of conflicts of interest. We also . . . agree to be bound by all the terms, covenants and conditions contained in this letter and the letter of March 27, 1992 . . . ." Delaney made no changes or interlineations to this language and signed the supplemental retainer agreement on behalf of himself personally as well as Catalina and American Patriots.

The Forward Winsome case went to trial and resulted in a significant jury verdict against the Catalina parties.

*The Arbitration*

Delaney, American Patriots and Catalina filed a lawsuit against Rutan for legal malpractice. Rutan petitioned the court to compel arbitration pursuant to the parties' retainer agreements. In October 1997, the trial court ordered the malpractice claims submitted to final binding arbitration before the American Arbitration Association (AAA). Rutan filed a demand for arbitration, seeking recovery of its attorney fees incurred in the Forward Winsome litigation from Delaney, American Patriots, and Catalina; Delaney, American Patriots and Catalina filed a counterclaim for legal malpractice.

Richard Chernick was appointed as arbitrator. The arbitration hearing was held from November 17 to November 20, 1998. During the arbitration, Rutan dropped its claim against Delaney personally for recovery of the attorney fees incurred in the Forward Winsome litigation, conceding that Delaney's interlineations on the supplemental retainer agreement absolved him of liability for those fees. The issue of liability for attorney fees to the prevailing party in the arbitration remained.

The arbitrator rendered an interim award on January 18, 1999, finding in favor of Rutan on all claims, and determining that Rutan was the prevailing party in the arbitration and entitled to recover its attorney fees and costs incurred in the arbitration. At the request of the arbitrator, the parties submitted written argument as to the amount of attorney fees incurred and Rutan's right to recover fees from Delaney personally.

The arbitrator issued a final award on March 9, 1999 (the March 9 Final Award), which repeated the interim award with respect to the analysis of the parties' claims and also resolved the issues of the attorney fees and costs to be recovered by Rutan. The March 9 Final Award determined that Delaney was personally liable for Rutan's attorney fees and costs incurred in the arbitration. In reaching this decision, the arbitrator interpreted the language of both retainer agreements, considered the arguments and evidence presented by the parties, and determined that Delaney's interlineations did not affect his rights and obligations regarding the payment of fees and costs incurred in connection with the arbitration.

The body of the March 9 Final Award addressed Delaney's claim for malpractice against Rutan; yet Delaney's name was omitted from the relevant paragraph under the heading "AWARD," which read as follows: "4. Respondents AMERICAN PATRIOTS, INC., a Delaware Corp., and CATALINA TOYS, INC. a California Corp., shall take nothing on their counterclaims [for legal malpractice] against RUTAN & TUCKER, LLP and MILFORD W. DAHL, JR."

On April 1 and 2, 1999, Rutan requested in writing that the arbitrator amend or correct the March 9 Final Award to add Delaney's name to paragraph 4 of the "AWARD." The arbitrator issued a corrected final award dated April 7, 1999 (the April 7 Corrected Final Award), apparently without having received Delaney's opposition to Rutan's request. The parties agreed the arbitrator should withdraw the April 7 Corrected Final Award and consider Delaney's opposition, which he did.

On April 28, 1999, the arbitrator issued a new final award (the April 28 Final Award). The April 28 Final Award was the same as the March 9 Final Award, with two exceptions. First, Delaney's name was listed in the relevant paragraph of the "AWARD" section, indicating the arbitrator also found against Delaney with regard to his malpractice claim against Rutan. Second, the arbitrator included a discussion of his authority to change the March 9 Final Award, stating the earlier omission of Delaney's name was a mistake and not an attempt to leave unresolved Delaney's malpractice claim.

*The Judgment*

On June 18, 1999, Rutan filed a petition to confirm the April 28 Final Award or, in the alternative, to correct or amend the March 9 Final Award. Delaney opposed the petition to confirm and filed a petition to vacate all three of the awards issued by the arbitrator—the March 9 Final Award, the April 7 Corrected Final Award, and the April 28 Final Award.

Following a hearing, the trial court granted Rutan's petition to confirm the April 28 Final Award and denied Delaney's petition to vacate. The trial court entered judgment on the arbitration award. Delaney appealed.

## DISCUSSION

### I. *The Trial Court Properly Refused to Vacate the Arbitrator's Award of Attorney Fees Against Delaney.*

Delaney argues the judgment must be reversed because the arbitrator exceeded his authority by awarding attorney fees in favor of Rutan and against Delaney. He contends his interlineated changes to the supplemental retainer agreement removed any liability on his part to pay Rutan's attorney fees and costs incurred in the arbitration as well as in the underlying Forward Winsome case. Delaney argues the arbitrator was acting outside the scope of his authority by awarding fees and costs against him personally, and the April 28 Final Award is therefore invalid. Rutan contends the issue of Delaney's liability for attorney fees and costs was properly before the arbitrator, was within the scope of his authority, and was properly a matter of contract interpretation following the admission and consideration of evidence.

Under Code of Civil Procedure section 1286.2, a final arbitration award may be vacated only under very limited circumstances. (All further statutory references are to the Code of Civil Procedure.) Here, Delaney relied on section 1286.2, subdivision (a)(4), which states: "Subject to Section 1286.4, the court shall vacate the award if the court determines . . . [¶] . . . [¶] . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

*Moncharsh, supra,* 3 Cal.4th 1, and the cases following it guide our analysis. In *Moncharsh,* the Supreme Court concluded parties to an arbitration have a strong expectation of finality in the process, requiring that "judicial intervention in the arbitration process be minimized." (*Id.* at p. 10.) The court analyzed the historical development of the rule determining the

basis upon which an arbitrator's decision may be vacated. (*Id.* at pp. 13-28.) The court reiterated the general rule that courts must pay substantial deference to an arbitrator's determination of his own authority. (*Id.* at pp. 8-13.) When an arbitrator acts beyond the scope of his authority, however, the court retains the power to vacate an award, but only if "the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) ■ These statutory and common law limitations on the ability of a court to change or vacate an arbitrator's decision fulfill the public policy requirement that interference with the final decisions of arbitrators be minimized.

■ Delaney argues modification of the supplemental retainer agreement eliminated the possibility of an award of any attorney fees to Rutan from Delaney. He contends the arbitrator therefore granted an unauthorized remedy and exceeded his contractual authority. The cases since *Moncharsh* do not support Delaney's position.

In *Advanced Micro Devices, supra,* 9 Cal.4th 362, the Supreme Court held an arbitration award must be upheld unless the relief granted bears no rational relationship to the arbitration contract. "The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source." (*Id.* at p. 381.) In *Advanced Micro Devices*, the arbitrator fashioned an equitable remedy for defendant's breach of contract based on his interpretation of the parties' contracts and in light of the testimony provided during a lengthy hearing. (*Id.* at pp. 369-371.) The trial court confirmed the award, but the Court of Appeal reversed, finding the arbitrator had exceeded his authority by creating a remedy with no " 'rational nexus' " to the parties' underlying contract. (*Id.* at p. 371.) The Supreme Court reversed, holding courts may not review de novo the remedies fashioned in arbitration, due to the need for and expectation of finality and the nature of arbitration proceedings. "A reviewing court is thus not in a favorable position to substitute its judgment for that of the arbitrators as to what relief is most just and equitable under all the circumstances." (*Id.* at p. 375.)

Similarly, in the present case, the arbitrator interpreted the retainer agreements to provide for an award of attorney fees against Delaney for fees incurred in the arbitration proceeding. The arbitrator considered Delaney's handwritten changes to the supplemental retainer agreement. While Delaney tries to style the arbitrator's decision as one exceeding the limits of the powers conferred by the retainer agreements, he is really just arguing the arbitrator wrongly interpreted the written contract on the issue of liability for

fees incurred during the arbitration itself. This contractual interpretation is precisely the type of decision by an arbitrator to which courts must grant deference. Under *Moncharsh* and *Advanced Micro Devices*, this decision was within the province of the arbitrator.

The trial court did not, as Delaney suggests, simply close its eyes to the arbitrator's decision. It recognized the arbitrator decided the question of whether under the contract Delaney owed attorney fees for the arbitration, as distinguished from fees owed to Rutan for litigating the Forward Winsome case. The trial court correctly framed the issue and determined the arbitrator's decision could not be vacated.

In support of his argument and in the face of *Moncharsh* and *Advanced Micro Devices*, Delaney relies solely on *Thompson v. Jespersen* (1990) 222 Cal.App.3d 964 [272 Cal.Rptr. 132] (*Thompson*). *Thompson* was decided prior to the Supreme Court's decision in *Moncharsh,* and therefore has limited precedential value. Furthermore, the facts of *Thompson* differ significantly from those here. In *Thompson*, neither the parties' arbitration agreement nor the applicable arbitration rules provided for an award of attorney fees; yet the arbitration panel awarded fees to the prevailing party. (*Id.* at pp. 966-969.) In the present case, in contrast, the retainer agreement and supplemental retainer agreement make numerous references to attorney fees, both in connection with the underlying Forward Winsome litigation and any later arbitrable disputes between the Catalina parties and Rutan. The issue in this case was whether certain language applied to Delaney; the arbitrator interpreted the contract on this issue.

Delaney argues *Thompson, supra,* 222 Cal.App.3d 964, applies in this case, despite the later holding of *Moncharsh,* because *Moncharsh* did not specifically overturn *Thompson,* nor did it directly address the issue of *Thompson.* Two later cases, however, answer this argument. In *Moshonov v. Walsh* (2000) 22 Cal.4th 771 [94 Cal.Rptr.2d 597, 996 P.2d 699] (*Moshonov*), the arbitrator refused to award attorney fees to the prevailing party, despite an attorney fees provision in the arbitration contract. The arbitrator concluded the attorney fees provision applied only to contract-based claims and no fees could be recovered in connection with the tort claims. (*Id.* at p. 775.) Because the arbitrator's interpretation of the contract terms regarding attorney fees was a " 'contested issue[] of law and fact submitted to the arbitrator for decision' [citation], the arbitrator's decision was final and could not be judicially reviewed for error." (*Id.* at p. 776, quoting *Moncharsh, supra,* 3 Cal.4th at p. 28.)

In *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782 [94 Cal.Rptr.2d 603, 996 P.2d 706] (*Moore*), the Supreme Court again was faced

with an arbitration panel's contractual interpretation regarding an arbitration award of attorney fees. In *Moore*, the arbitrators denied all relief requested by the plaintiff, but refused to award the defendant its attorney fees although the arbitration agreement provided for them. (*Id.* at pp. 785-786.) Nevertheless, the Supreme Court held, "Even if legally erroneous, such an arbitral decision as to who, if anyone, prevailed in the contractual dispute would not ordinarily be reviewable under section 1286.2 or 1286.6." (*Id.* at p. 788.)

The issue here is similar to that in both *Moshonov* and *Moore*. Based on his interpretation of the arbitration agreement and having considered all the evidence, the arbitrator made a decision regarding an award of attorney fees incurred in the arbitration. The arbitrator's decision was entitled to deference by the court and could not be vacated.

## II. The Arbitrator Could Amend the March 9 Final Award.

Delaney next argues the arbitrator exceeded his authority by purporting to correct the March 9 Final Award. He contends sections 1284 and 1286.6, which provide the sole vehicles for correcting an arbitration award, do not permit the type of change made here, namely, the inclusion of his name in one of the paragraphs under the "AWARD" heading. Additionally, Delaney contends the change was untimely because Rutan did not request the correction within 10 days after, and the correction did not issue within 30 days after, service of a signed copy of the March 9 Final Award. Finally, at oral argument Delaney contended there was no factual support for the conclusion that the omission of his name was a mistake and not an attempt to leave unresolved his malpractice claim. We disagree with Delaney on all of these points.

### A. Amendment of an arbitration award is permitted.

Section 1286.6 permits an arbitrator, upon written request, to correct a final award when "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] . . . or [¶] (c) [t]he award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6.) Section 1284 provides the procedural mechanism for correcting the award on these grounds. Section 1284 requires a party to apply for a correction "not later than 10 days after service of a signed copy of the award on the applicant," gives any other party "10 days after the application is delivered or mailed to the objector" to make written objections to the application for correction, and requires the arbitrator to issue any corrected award "not later than 30 days after service of a signed copy of the award on the applicant." (§ 1284.)

In *A.M. Classic, supra,* 70 Cal.App.4th 1470, the court held correcting an arbitration award to include reference to an entire issue inadvertently omitted was not permitted by section 1284. (*A.M. Classic,* at p. 1476.) Amendment of the award under that circumstance, however, was appropriate if the amendment was consistent with other findings on the merits and would not prejudice the legitimate interests of the parties. (*Id.* at p. 1478.) The rule of *A.M. Classic* advances the public policy of ensuring courts "indulge every reasonable intendment to give effect to arbitration proceedings." (*Id.* at p. 1474.) In *Century City Medical Plaza, supra,* 86 Cal.App.4th 865, the court (a different division of the same district that decided *A.M. Classic*) agreed that *amendment* of an arbitration award to include an issue inadvertently omitted is different from *correction* of an error. (*Id.* at p. 880.) (The arbitrator in the case before us declined to recognize the distinction between amendments and corrections to arbitration awards then set forth in *A.M. Classic.*)

■ We follow *A.M. Classic* and *Century City Medical Plaza* and conclude the addition of Delaney's name to the "AWARD" paragraph was a permissible amendment. Here, the arbitrator had the authority to decide Delaney's malpractice claim, and both the interim award and the March 9 Final Award indicate he did so. Indeed, the April 28 Final Award stated the failure to mention Delaney under the "AWARD" heading was the result of inadvertence or mistake on the arbitrator's part. Rutan advised the arbitrator and the other parties of the need for amendment, which then issued. The amendment did not prejudice the legitimate interests of any party, and the change was consistent with both the March 9 Final Award and the remainder of the April 28 Final Award.

B. *Because the amendment was made prior to judicial confirmation of the arbitration award, it was timely.*

■ A split of authority exists as to time restrictions applicable to amendments of arbitration awards. In *A.M. Classic, supra,* 70 Cal.App.4th at page 1478, the court held a final award may be amended at any time prior to judicial confirmation of the award. "California's contractual arbitration law permits arbitrators to issue an amended award to resolve an issue omitted from the original award through the mistake, inadvertence, or excusable neglect of the arbitrator *if the amendment is made before judicial confirmation of the original award,* is not inconsistent with other findings on the merits of the controversy, and does not cause demonstrable prejudice to the legitimate interests of any party." (Italics added.)

In *Century City Medical Plaza,* the court concluded the decision in *A.M. Classic* was "entirely justified," with one additional condition: The amended

or supplemental award must be "requested and acted upon within the time allowed for the correction of an award by either statute or any controlling rules applicable to the arbitration." (*Century City Medical Plaza, supra,* 86 Cal.App.4th at p. 881.) The court acknowledged, "This condition is not mentioned in *A.M. Classic,* but we believe it is necessarily required. A judicially endorsed right to modify or amend an award upon proof of an inadvertent omission should not enjoy more generous temporal restrictions than those provided for expressly authorized corrections or modifications under section 1284 . . . or applicable arbitration rules (see, e.g., AAA rule 48 . . .) in those cases where the parties have agreed to be bound by such rules." (*Id.* at p. 881, .fn. 25.)

We conclude *A.M. Classic* states reasonable and complete standards, and the additional condition imposed by *Century City Medical Plaza* is not warranted. *A.M. Classic* requires the amended award to be consistent with other findings on the merits of the controversy and not cause demonstrable prejudice to the legitimate interests of a party. These two requirements adequately protect the integrity of the arbitration award and are consistent with California case law on arbitration. The temporal requirement set forth in *A.M. Classic*—that the amendment must be made before judicial confirmation of the award—is a reasonable, bright-line test. To permit amendment until the trial court confirms the award furthers the policies set forth in *Moncharsh* and its progeny of ensuring finality of, and limiting judicial intervention in, the arbitration process. The additional time requirement imposed in *Century City Medical Plaza* is not necessary to achieve these goals.

The very nature of the change is reason to differentiate between correction and amendment of an award in terms of the time within which either must be made. "[I]t would be irrational to discard all the time and money spent by the parties where an arbitration award is inadvertently incomplete in one respect and where an oversight can be corrected without substantial prejudice to the legitimate interests of a party. To deny arbitrators the authority to complete their task under such circumstances elevates form over substance." (*A.M. Classic, supra,* 70 Cal.App.4th at p. 1478.)

Delaney urges us to adopt the approach of *Century City Medical Plaza* and impose the same time requirements on amendments as section 1284 imposes on corrections. Specifically, Delaney argues that if a party fails to apply for an amendment within 10 days after service of the award and the arbitrator fails to amend the award within 30 days after service of the award, the award cannot be amended. Here, the amendment was necessary to address the inadvertent omission of Delaney's name from the disposition of the malpractice counterclaim and was consistent with the body of the March 9 Final

Award and the remainder of the April 28 Final Award. Delaney argues the failure to comply with transported time requirements of section 1284 should make the award a nullity and the arbitration should be conducted again. Such a harsh result serves no legitimate purpose and would be contrary to the policies recognized in *Moncharsh* and the cases following it. Inasmuch as the amendment in this case was made before judicial confirmation of the original award, it was timely.

C.   *The amended arbitration award sufficiently explains its purpose.*

█   At oral argument, Delaney raised new issues. He argued (1) *Century City Medical Plaza* imposes yet another hurdle to enforcement of the arbitration award, namely, that admissible evidence of the arbitrator's intent in making the amendment must be presented, and (2) Rutan did not offer any such evidence. For the reasons explained below, this effort to vacate the arbitration award also fails.

In *A.M. Classic*, the arbitrator submitted a declaration to the trial court, stating that the failure to address an issue in the original award was inadvertent. (*A.M. Classic, supra,* 70 Cal.App.4th at p. 1473.) In *Century City Medical Plaza*, there was a question whether the need for an amended award was due to the arbitrator's inadvertent omission of an issue, but there was no explanation before the trial court as to why the change was made. (*Century City Medical Plaza, supra,* 86 Cal.App.4th at pp. 881-882.) The matter was therefore remanded for factual findings as to the reason for the change. (*Ibid.*)

We reject Delaney's argument we should vacate the award on these grounds for two reasons. First, the issue was waived because it was never raised before the trial court. Second, the record before the trial court shows that the arbitrator amended the award because the original award inadvertently omitted Delaney's name from the list of counterclaimants. The arbitrator specifically explained the reason for adding Delaney's name to the award, and the language of the awards supported his statement; there was no evidence to the contrary. While in *Century City Medical Plaza* the court had no indication why the arbitrator amended the award, thus necessitating the remand for an evidentiary hearing, the information before the trial court in this case made clear what the arbitrator did and the reason for his action.

III.   *Rutan's Motion for Sanctions.*

More than 21 months after the appeal was filed and more than 16 months after the opening brief was filed, Rutan moved for sanctions against

Delaney's counsel, but not Delaney, for filing and prosecuting a frivolous appeal. An appeal is frivolous "when it is prosecuted for an improper motive . . . or when it indisputably has no merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Meritless is not the same as frivolous. Rutan's motion for sanctions is denied.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 2002. Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.