Filed 12/23/13  Vadim Chudnovsky, M.D., Inc. v. Chapman Medical Center, Inc. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| VADIM CHUDNOVSKY, M.D., INC., et al.<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>CHAPMAN MEDICAL CENTER, INC.,<br><br>    Defendant and Appellant. | G047990<br><br>(Super. Ct. No. 30-2012-00595754)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge.  Affirmed.

Buchalter Nemer, Debra Deem, Robert M. Dato, and Julie Simer for Defendant and Appellant.

Law Offices of Jefferey B. Lurner and Jefferey B. Lurner for Plaintiffs and Respondents.

\*        \*        \*

Defendant Chapman Medical Center, Inc. (Chapman Medical), appeals a judgment confirming an arbitration award in favor of plaintiffs Vadim Chudnovsky M.D., Inc. (Chudnovsky Corporation), and Dr. Vadim Chudnovsky (Dr. Chudnovsky). (Code Civ. Proc., §§ 1287.4, 1294, subd. (d).) Chapman Medical claims the arbitrator exceeded his powers (Code Civ. Proc., § 1286.2, subd. (a)(4)) and the award should therefore be vacated. We disagree and affirm the judgment.

FACTS[1]

In January 2008, Chapman Medical entered into a two-year agreement for radiology department coverage at its hospital (Agreement) with Chudnovsky Corporation. The Agreement included an arbitration clause.[2] The Agreement was renewed for an additional year effective January 2010. These contractual documents were drafted solely by Chapman Medical.

Dr. Chudnovsky signed the agreement as president of Chudnovsky Corporation, and Dr. Chudnovsky was identified as the individual who would be

---

[1]    In addition to describing pertinent exhibits in the record, we rely on and extensively quote the arbitrator's findings as the basis for our statement of facts. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1 (*Advanced Micro Devices*).)

[2]    "**DISPUTE RESOLUTION**. In the event of any dispute arising out of or relating to this Agreement, then such dispute shall be resolved solely and exclusively by confidential binding arbitration with the Orange County branch of Judicial Arbitration and Mediation Services ('**JAMS**') to be governed by JAMS' Commercial Rules of Arbitration in effect at the time of the commencement of the arbitration (the '**JAMS Rules**') and heard before one arbitrator. The parties shall attempt to mutually select the arbitrator. In the event they are unable to mutually agree, the arbitrator shall be selected by the procedures prescribed by the JAMS Rules. Each party shall bear its own attorneys' fees, expert witness fees, and costs incurred in connection with any arbitration."

2

designated by Chudnovsky Corporation to perform duties contemplated by the Agreement. Chudnovsky Corporation "was nothing more than a tax-advantaged 'loan out' corporation for Dr. Chudnovsky's professional services . . . ."

The Agreement does not carefully distinguish between Dr. Chudnovsky and Chudnovsky Corporation in its assignment of obligations and benefits, referring at times to the "Director" (a term ambiguously defined in the introductory clause to perhaps include Dr. Chudnovsky) and at other times to the "Physician" (a term presumably referring to Dr. Chudnovsky). For instance, "Director shall provide and/or provide Physicians to cover the Department and provide the Services (to include Teleradiology services) on a 24-hour per day basis every day of the calendar year." But "[f]or services rendered under this agreement, hospital shall pay physician as full compensation for services hereunder, a monthly fee of twenty thousand dollars ($20,000.00). Physician shall have the sole responsibility to compensate Physicians." "Director shall separately bill patients for professional services rendered pursuant to this Agreement and have the exclusive right to collections therefrom."

Likewise, documents filed by Chapman Medical in the arbitration suggest that Chapman Medical did not carefully distinguish between Dr. Chudnovsky and Chudnovsky Corporation. Chapman Medical's answer to the demand for arbitration refers to Dr. Chudnovsky as a plaintiff. In Chapman Medical's statement of agreed facts and issues, counsel for Chapman Medical stated that Dr. Chudnovsky and Chapman Medical "'are parties to this dispute.'"

Except for "occasional spot coverage . . . , the only doctor who performed radiological services at [Chapman Medical] was and was intended to be Dr. Chudnovsky. Because Dr. Chudnovsky, alone, was in reality [Chapman Medical's] Radiology Department, . . . there was no management or scheduling or overseeing of anyone else's radiological services at [Chapman Medical. Chudnovsky Corporation] had no employees or staff, other than Dr. Chudnovsky." "That reality was precisely what [Chapman

3

Medical] wanted and intended under the Agreement, in furtherance of what [Chapman Medical] described as a 'solo model for coverage of the Radiology Department.' [¶] Integral to that agreed 'model,' was [Chapman Medical's] guarantee of minimum compensation of $240,000 per year, payable to [Chudnovsky Corporation], plus payments received from others on billings for Dr. Chudnovsky's services as [Chapman Medical's] sole radiologist . . . ."

The Agreement purports to allow either party, "in its sole discretion, [to] terminate this Agreement without cause by giving the other party at least thirty (30) days' prior written notice." Chapman Medical's "Medical Staff Bylaws permit termination of medical staff privileges and/or membership only for enumerated and defined reasons and 'for cause' bases (i.e., clinical qualifications, professional responsibility, quality of care). Certain factors — such as economic considerations — are prohibited reasons and bases for decisions to terminate, limit or restrict medical staff privileges."

Chapman Medical transmitted a letter to Dr. Chudnovsky on April 8, 2010, purporting to unilaterally terminate the Agreement effective June 1, 2010. Chapman Medical transmitted a second letter on April 28, 2010, purporting to extend the effective date of termination to August 1, 2010. "[U]nbeknownst to Dr. Chudnovsky, [Chapman Medical] was in negotiations and concluded a contract with a group of radiologists (the Wieler Group) to supplant" Dr. Chudnovsky. "The substance and reality of [Chapman Medical's] concurrent termination of the Agreement and installing a pre-arranged new regime in charge of the . . . Radiology Department was tantamount to termination of Dr. Chudnovsky's medical staff privileges to competently render professional radiological services at [Chapman Medical]. Following his termination . . . and his unsuccessful application to join the new team installed to supplant him . . . , any of Dr. Chudnovsky's remaining staff privileges . . . were rendered empty or meaningless."

The arbitrator refused to grant Chapman Medical's motion to dismiss Dr. Chudnovsky from the arbitration. The arbitrator also found that Chapman Medical's

4

"Medical Staff Bylaws" applied to the termination of the Agreement and that the medical staff bylaws "preempt, override or 'trump' the terms and effect of any contract of a staff member . . . ." The arbitrator concluded that Chapman Medical's "unilateral termination of the Agreement and of Dr. Chudnovsky's employment . . . and of his medical staff privileges . . . was without cause and for economic reasons" entitling plaintiffs to monetary damages.

The final award in favor of plaintiffs and against Chapman Medical consisted of several components: (1) $100,000 to Chudnovsky Corporation for the loss of the flat $20,000 monthly fee during the final five months of the Agreement; (2) $118,900 to Dr. Chudnovsky for the "net collectible amount of Dr. Chudnovsky's claimed lost income for professional services, during the period August through December 2011"; (3) $19,580 in pre-award interest to Chudnovsky Corporation on the $100,000 award; and (4) $265,440 in attorney fees awarded to plaintiffs pursuant to Labor Code section 218.5. The trial court granted plaintiffs' petition to confirm the arbitration award, denied Chapman Medical's petition to vacate the award, and entered judgment consistent with its ruling.

## DISCUSSION

We review the trial court's confirmation of the arbitration award de novo. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.) "[A]n arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*).) Exceptions to this rule are "set forth in [Code

5

of Civil Procedure] sections 1286.2 (to vacate [the arbitral award]) and 1286.6 (for correction [of the arbitral award]).” (*Id.* at p. 33.)[3]

In support of its position, Chapman Medical cites Code of Civil Procedure section 1286.2, subdivision (a)(4): “[T]he court shall vacate the award if the court determines” “[t]he arbitrators *exceeded their powers* and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.” (Italics added.) “It is well settled that ‘arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.’ [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers.” (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) “[T]he remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator.” (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 367.) “Arbitrators ‘exceed[] their powers’ [citation] by acting without subject matter jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, upholding an illegal contract, issuing an award that violates a well-defined public policy or a statutory right, fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law.” (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1436 (*Greenspan*).)

Chapman Medical identifies five specific ways in which the arbitrator supposedly exceeded his powers. We address each contention in turn. Before doing so, we observe generally that the award of actual damages to plaintiffs is rationally related to

---

[3] Another exception to the rule is that the parties themselves may agree to provide for judicial review of an arbitrator’s decision. (See *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 [“The California rule is that the parties may obtain judicial review of the merits by express agreement”].) But the Agreement does not provide for judicial review of the arbitration decision.

the Agreement. It is undisputed that the Agreement was terminated five months early. The court awarded $100,000 (plus interest) to Chudnovsky Corporation for the early termination of the Agreement based on the $20,000 per month owed to Chudnovsky Corporation pursuant to the Agreement. The court awarded $118,900 to Dr. Chudnovsky for his lost opportunity to provide exclusive radiology services at the hospital as a result of the early termination of the Agreement. To the extent Chapman Medical seeks to have this court reinterpret the Agreement under California law or review the record for substantial evidence, we will not do so. The award cannot be vacated merely because the arbitrator may have relied on erroneous legal reasoning or finding of facts.

*Dr. Chudnovsky Included as a Plaintiff*

It is uncontested that Chapman Medical and Chudnovsky Corporation agreed to arbitrate any disputes "arising out of or relating to" the Agreement.[4] Chapman Medical argues that the arbitrator exceeded his powers by allowing Dr. Chudnovsky to arbitrate his claims against Chapman Medical because, although he signed the Agreement on behalf of Chudnovsky Corporation and was the primary subject of the Agreement as the designated provider of radiology services, Dr. Chudnovsky was not separately listed as a signatory to the Agreement on his own behalf.

On the merits of this issue, plaintiffs pointed to (1) ambiguities in the Agreement that make it reasonable to conclude that Dr. Chudnovsky was intended to be a party to the Agreement; (2) admissions made by Chapman Medical during the arbitration with regard to the status of Dr. Chudnovsky as a party to the Agreement and the arbitration; and (3) the reality of Chudnovsky Corporation (which acted as a mere "loan out" corporation for Dr. Chudnovsky's services for tax purposes rather than as an entity employing other agents and fulfilling other functions). The arbitrator relied on this

---

[4] The Agreement's arbitration clause "'is very broad.'" (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553, fn. 1 (*Dream Theater*).)

evidence for his conclusion that Dr. Chudnovsky was intended to be a party to (or at least a third party beneficiary of) the Agreement, and this was clearly a reasonable decision.

But the issue in this appeal boils down to whether the arbitrator was empowered to determine whether Dr. Chudnovsky was a proper party to the arbitration whose claims against Chapman Medical could be arbitrated. "The issue of who should decide arbitrability turns on what the parties agreed in their contract." (*Dream Theater*, *supra*, 124 Cal.App.4th at p. 551 ); *id.* at p. 552 ["the question of arbitrability is for judicial determination '[u]nless the parties clearly and unmistakably provide otherwise'"].) Here, the Agreement (prepared and signed by Chapman Medical) incorporated the JAMS Rules, Rule 11(c) of which states in relevant part: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought, and *who are proper parties to the arbitration*, shall be submitted to and ruled on by the arbitrator." (Italics added.) JAMS rule 11(a) states that "[t]he resolution of the issue by the arbitrator shall be final." Case authority has held that the selection of "JAMS Rule 11 authorized the arbitrator to make the *final* decision regarding what issues were arbitrable." (*Greenspan*, *supra*, 185 Cal.App.4th at p. 1442.)

In addition to relying on what it deemed "judicial admissions" by Chapman Medical as to the status of Dr. Chudnovsky as a party, the arbitrator cited *Dream Theater* and JAMS rule 11 in its order denying Chapman Medical's motion to dismiss Dr. Chudnovsky from the arbitration. The trial court relied on *Dream Theater* and *Greenspan*, as well as the parties' incorporation of JAMS rule 11, in its statement of decision confirming the arbitration award. Plaintiffs discussed these cases and JAMS rule 11 in the respondents' brief. Chapman Medical, conversely, does not mention either case or JAMS rule 11 in its opening brief or reply brief. Indeed, Chapman Medical's reply brief is entirely silent with regard to the argument that the arbitrator exceeded its powers by deeming Dr. Chudnovsky to be a party to the arbitration.

8

In its opening brief, Chapman Medical instead cites cases holding that "[t]he question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance." (*American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 179 [case in which undisclosed alleged principal of signatory sought to participate in arbitration]; see also *Unimart v. Superior Court* (1969) 1 Cal.App.3d 1039, 1045 ["Whether or not the arbitration provisions are operative against a party who has not signed the arbitration agreement" is a determination for the court]; *Retail Clerks Union v. L. Bloom Sons Co.* (1959) 173 Cal.App.2d 701, 703-704 [court, not arbitrator, must decide alter ego question that was basis for petition to compel arbitration against nonsignatory].) But here, Dr. Chudnovsky actually signed the Agreement and was identified in the Agreement as the radiologist who would provide services to the hospital. Moreover, the parties explicitly incorporated JAMS rule 11, which provides the arbitrator with the power to determine the proper parties to the arbitration. Finally, Chapman Medical identified Dr. Chudnovsky as a party in preliminary submissions to the arbitrator. None of the cases cited by Chapman Medical presented similar circumstances to those in the instant case. The arbitrator had the power to decide whether Dr. Chudnovsky was properly a party to the arbitration.

*Alter Ego Finding Regarding Dr. Chudnovsky and Chudnovsky Corporation*

Without citing to a specific page in the record where the arbitrator actually made a finding under an alter ego theory, Chapman Medical next contends the arbitrator exceeded his powers "on the alter ego issue." This issue, as presented in Chapman Medical's opening brief, is that plaintiffs apparently contended Dr. Chudnovsky was the alter ego of Chudnovsky Corporation for certain purposes. Chapman Medical argues that it is legally improper to utilize alter ego principles at the request of the parties that created the separate corporate existence of the entity. Like the trial court, we are unsure whether the arbitrator actually made or relied on an alter ego finding.

9

Even assuming the arbitrator made such a finding, it would not provide grounds to vacate the arbitration award. First, as established in the previous section, the arbitrator was empowered by the parties to determine which parties and claims were properly before it. (See *Greenspan*, *supra*, 185 Cal.App.4th at p. 1444 [arbitrator's reliance on alter ego principles in imposing joint and several liability was legitimate under authority granted to arbitrator by agreement].) Second, we will not vacate an arbitration award merely because the arbitrator erred in its legal reasoning. Third and finally, there is case authority for the proposition that it is sometimes appropriate to disregard the corporate form when an individual's statutory rights would be undermined because he chose to utilize a corporation to contract with his employer. (*Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 7-9 [individual should not be deprived of unemployment benefits because he utilized corporation to conduct affairs]; see also *British Columbia Inv. Co. v. Federal Deposit Ins. Corp.* (S.D.Cal. 1976) 420 F.Supp. 1217, 1222 ["it is apparent that, under California law, a plaintiff may seek disregard of its own corporate entity"].) Even though the arbitrator and plaintiffs (in their respondents' brief) discussed *Cooperman*, Chapman Medical makes no mention of the case in its briefs. Indeed, Chapman Medical offers no rebuttal at all with regard to the alter ego issue in its reply brief. We reject this challenge to the arbitration award.

*Application of Medical Staff Bylaws*

Next, Chapman Medical contends the arbitrator exceeded his authority by applying the medical staff bylaws to the dispute rather than referring only to the Agreement. This was particularly important in determining whether the Agreement could be terminated without cause after one month's notice. In a preliminary ruling, the arbitrator found the provision in the Agreement allowing termination without cause to be "null, void and ineffective" in light of the medical staff bylaws, which allowed "termination of medical staff privileges and/or membership only for enumerated and

10

defined reasons and 'for cause' bases (i.e., clinical qualifications, professional responsibility, quality of care)." Recall that Dr. Chudnovsky contended (and the arbitrator agreed) that Chapman Medical had essentially terminated his staff privileges without cause when it replaced Chudnovsky Corporation with another radiology group as the exclusive provider of radiology services at the hospital. In its appeal, Chapman Medical asserts the medical staff bylaws simply do not apply to this dispute and, even if they did apply, Dr. Chudnovsky did not exhaust his administrative remedies under the medical staff bylaws.

We agree with the trial court that Chapman Medical is asking us to disagree with the arbitrator's contract interpretation and application of the law, not showing that the arbitrator exceeded its authority. "When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).) The question of whether the termination clause in the Agreement was valid and enforceable is indisputably within the scope of the arbitrator's appointed task. Thus, we need not concern ourselves with whether the arbitrator correctly interpreted the Agreement and applied the law. (Cf. *Centeno v. Roseville Community Hospital* (1979) 107 Cal.App.3d 62, 65-66 [affirming trial court judgment in favor of defendant hospital and against plaintiff radiologist who sued after a fallout with his partners which led to plaintiff's exclusion from the hospital due to the partnership's exclusive radiology services contract].)

Moreover, as noted by the arbitrator, Chapman Medical conceded during the first arbitration hearing "that the Medical Staff Bylaws apply to Dr. Chudnovsky's medical staff privileges . . . ." Chapman Medical also took the position early in the

11

arbitration that Dr. Chudnovsky "could not have qualified for or even requested an administrative hearing," a position that the arbitrator deemed inconsistent with Chapman Medical's subsequent argument that Dr. Chudnovsky should have exhausted his administrative remedies before citing the medical staff bylaws in the arbitration. (Cf. *Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987, 1003 ["When the dispute arises from business aspects of the doctor and hospital's relationship, there is no need to submit the dispute to a panel of expert medical peers"].) Chapman Medical does not attempt to reconcile its current position on appeal with its statements during the arbitration; Chapman Medical's reply brief is once more entirely silent as to this issue after it was pointed out in the respondents' brief. The arbitrator did not exceed its powers by concluding that Dr. Chudnovsky did not need to exhaust his administrative remedies. (See *Gueyffier*, *supra*, 43 Cal.4th at p. 1185 [arbitrator had power to find that compliance with notice-and-cure provision in contract would have been futile].)

*Recovery of Damages by Dr. Chudnovsky*

Chapman Medical also contends the arbitrator exceeded his authority by awarding $118,900 to Dr. Chudnovsky (for lost income that would have been earned had the Agreement not been terminated five months early). Dr. Chudnovsky and the arbitrator described this claim for damages as one made pursuant to Labor Code section 218.5 for unpaid wages. Labor Code section 218.5 provides, "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Pursuant to Labor Code section 200, "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

12

Chapman Medical specifically claims that the award of damages under the Labor Code to Dr. Chudnovsky violates public policy and is therefore beyond the scope of the arbitrator's powers. It is true that arbitration awards have been vacated as inconsistent with public policy, but the case examples cited by Chapman Medical are not particularly on point. (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272 ["arbitrator exceeded his powers . . . by purporting to give effect to" provisions of a collective bargaining agreement that were preempted by the Education Code]; *Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1195 [arbitrator exceeded her powers by reforming a memorandum of understanding between a public employee union and public employer after such memorandum of understanding "had been ratified and approved by the Legislature" pursuant to the Gov. Code].)

Chapman Medical asserts that a private, for-profit hospital may not employ (and pay wages to) doctors because it would violate the prohibition against the practice of medicine by a corporation. (See Bus. & Prof. Code, § 2400 ["Corporations and other artificial legal entities shall have no professional rights, privileges, or powers. However, the Division of Licensing may in its discretion, after such investigation and review of such documentary evidence as it may require, and under regulations adopted by it, grant approval of the employment of licensees on a salary basis by licensed charitable institutions, foundations, or clinics, if no charge for professional services rendered patients is made by any such institution, foundation, or clinic"].) Moreover, Chapman Medical points to language in the Agreement suggesting it contemplated an independent contractor arrangement between plaintiffs and Chapman Medical, and not an employment arrangement between Dr. Chudnovsky and Chapman Medical. Indeed, the Agreement states that Dr. Chudnovsky will directly bill his patients for services rendered and will not be paid by Chapman Medical (other than the $20,000 flat rate paid by Chapman Medical to Chudnovsky Corporation each month). Chapman Medical concludes that to endorse

13

the arbitrator's award is to endorse a violation of public policy in that the award presumes an employment relationship between Chapman Medical and Dr. Chudnovsky. (But see *California Physicians' Service v. Aoki Diabetes Research Institute* (2008) 163 Cal.App.4th 1506, 1516-1517 [a contract violating the "statutory ban on the corporate practice of medicine" is not necessarily unenforceable, particularly where the issue is not the protection of patients].)

Chapman Medical's contentions raise questions about the correctness of the arbitrator's legal reasoning. But the argument also misses the big picture. As discussed above, the economic consequences of Chapman Medical's termination of the Agreement clearly affected Dr. Chudnovsky's ability to earn fees from patients at the hospital. The question of whether Chapman Medical should be held to account for such losses was properly before the arbitrator. That the arbitrator might have erred in its legal reasoning is not pertinent to our inquiry. Had the arbitrator simply awarded damages to Dr. Chudnovsky under a breach of contract theory, Chapman Medical would have no argument that such an award violated public policy. This counterfactual illustrates the fact that Chapman Medical is taking issue with the arbitrator's legal reasoning, not the legitimacy of the award of damages.

*Award of Attorney Fees*

Chapman Medical's final argument is that the court exceeded its powers by awarding attorney fees to plaintiffs based on the authority of Labor Code section 218.5. The Agreement itself specifically provides, "Each party shall bear its own attorneys' fees, expert witness fees, and costs incurred in connection with any arbitration." According to Chapman Medical, this express restriction in the Agreement eliminated the arbitrator's ability to award attorney fees. (See *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 376 ["arbitrators, unless expressly restricted by the agreement or the submission to

14

arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies"].)

Most of the extant case law on attorney fee awards in arbitrations pertains to situations in which the parties' agreement provides for an award of attorney fees to the prevailing party. An arbitrator may award attorney fees to the prevailing party in the arbitration if the agreement between the parties provides for such an award. (See *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1314 (*Harris*) ["Where . . . a contract both compels arbitration and awards attorney's fees to the prevailing party in 'litigation' arising out of the contract, the attorneys' fee provision applies to the arbitration"].[5] An arbitrator may also decline to designate either party as prevailing and thereby refuse to award attorney fees to either party. (*Moore*, *supra*, 22 Cal.4th at p. 788.) Courts may not interfere with the arbitrator's determination of which party prevailed, even if that determination is legally erroneous. (*Moore*, *supra*, 22 Cal.4th at p. 788; *Creative Plastering, Inc. v. Hedley Builders, Inc.* (1993) 19 Cal.App.4th 1662, 1664-1666.) Nor may courts interfere with the amount of attorney fees awarded to the prevailing party by an arbitrator, a determination which depends on the resolution of contested legal and factual issues. (*Harris*, *supra*, 96 Cal.App.4th at p. 1315.)

In a pre-*Moncharsh* case, an appellate court held that an arbitrator lacked jurisdiction to award attorney fees to a party in a contract dispute when nothing in the contract or any other source of authority (such as the arbitration rules agreed to by the

---

[5] Indeed, one case holds that an arbitrator *must* award attorney fees to the party it has designated as the prevailing party if the contract specifies that the prevailing party shall be awarded its attorney fees. (*DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809, 1815.) Our Supreme Court has declined to specifically decide whether *DiMarco v. Chaney*, *supra*, 31 Cal.App.4th 1809, was rightly decided, instead preferring to distinguish its facts from those presented in cases in which the Supreme Court refused to vacate the arbitrator's award. (See *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 779; *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787-788 (*Moore*); *Gueyffier*, *supra*, 43 Cal.4th at p. 1188.)

15

parties) provided for the award of attorney fees to the prevailing party. (*Thompson v. Jespersen* (1990) 222 Cal.App.3d 964, 966-968 (*Thompson*); see also *Delaney v. Dahl* (2002) 99 Cal.App.4th 647, 656 [noting that *Thompson*'s holding, if it remains valid in the aftermath of subsequent California Supreme Court jurisprudence, is of "limited precedential value" in light of the deference owed to arbitral awards].) In one important way, the facts in the instant case are even stronger than those in *Thompson*, in that the Agreement here explicitly states that the parties shall bear their own attorney fees in the arbitration.

But plaintiffs asserted (and the arbitrator agreed) that Dr. Chudnovsky's claim under Labor Code section 218.5 provided statutory authority for the award of attorneys' fees. Arbitration "serves as a *substitute* for proceedings in court" and is the functional equivalent of an "action" for purposes of statutory remedies. (*Baker v. Sadick* (1984) 162 Cal.App.3d 618, 628 [endorsing award of punitive damages by arbitrator]; see Lab. Code, § 218.5 [authorizing attorney fees "[i]n any action"].) "When parties agree to resolve statutory claims through arbitration, it is reasonable to infer that they consent to abide by the substantive and remedial provisions of the statute. [Citation.] Otherwise, a party would not be able to fully '"vindicate [his or her] statutory cause of action in the arbitral forum."'" (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1087; *id*. at pp. 1086-1087 [costs and attorney fees under relevant statute would be available in arbitration]; see also *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 103 ["The principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed"]; *Caro v. Smith* (1997) 59 Cal.App.4th 725, 734-735 [agreement to binding arbitration included arbitrator's award of attorney fees pursuant to Labor Code].)[6] The case law is

_____

[6] Chapman Medical's counterpoint to these authorities, *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31 Cal.App.4th 321, is not particularly relevant. The published portion of this opinion merely held that "a proceeding to confirm an arbitration

16

unclear, however, as to how these principles should be incorporated into a case like that presented here, i.e., an agreement to arbitrate that explicitly states the parties shall bear their own attorney fees.

We are skeptical of the arbitrator's application of California law to classify Dr. Chudnovsky as an employee of Chapman Medical who received wages from Chapman Medical. The court's application of the Labor Code to this dispute was dubious. Were we to review the arbitral award of attorney fees de novo or even for an abuse of discretion (on the rationale that the Agreement expressly restricted the arbitrator from awarding attorney fees), we might correct the arbitral award to remove the award of attorney fees.

But, as repeatedly explained above, it is generally not the role of courts to fix legal or factual errors committed by arbitrators. If the attorney fee question fits into this rubric, it is clear we should affirm the trial court's denial of Chapman Medical's request for relief. The parties agreed to submit questions of arbitrability to the arbitrator pursuant to JAMS rule 11. The parties agreed to submit "any dispute arising out of or relating to th[e] Agreement" to the arbitrator. Thus, it was for the arbitrator (and not this court) to determine the parties subject to the arbitration, the issues subject to arbitration, and the resolution of the issues. It was certainly reasonable for the arbitrator to conclude that Dr. Chudnovsky's claims for damages arose out of or were related to the Agreement, in that the termination of the Agreement caused any harm suffered by Dr. Chudnovsky's inability to perform radiological services at the hospital. Under this approach, the arbitrator did not exceed his powers by ruling that the parties had submitted a Labor Code wage claim as part of the arbitration, which entitled the prevailing party to its attorney fees. (*Taylor v. Van-Catlin Construction* (2005) 130 Cal.App.4th 1061, 1067-1068

---

award does not constitute an action within the meaning of Civil Code section 3176."
(*Id*. at p. 323.)

17

[arbitrator does not exceed powers in awarding attorney fees even if arbitrator misreads case law and misinterprets statutory authority for attorney fees].)

Ultimately, we need not decide which approach to follow in this case. In its initial answer to plaintiffs' arbitration demand, Chapman Medical requested an award of reasonable attorneys' fees and costs as part of an arbitral award. In plaintiffs' amended arbitration demand, plaintiffs requested an award of attorney fees and costs. In Chapman Medical's amended answer to plaintiffs' amended arbitration demand, Chapman Medical requested costs and stated, "To the extent that [plaintiffs are] alleging a statutory or contractual basis for an award of attorneys fees to the prevailing party, [Chapman Medical] shall be entitled to an award of attorney fees if it is the prevailing party." If both parties request an award of attorney fees in the arbitration, any error in awarding attorney fees is invited and therefore not outside the arbitrator's powers. (*Harris*, *supra*, 96 Cal.App.4th at p. 1314; see also *Moshonov*, *supra*, 22 Cal.4th at p. 771, 776 [noting that "all parties had prayed for fees in their various pleadings" in support of conclusion that arbitrator's decision on attorney fee award was final].) Thus, despite the contents of the Agreement, the parties subsequently provided the arbitrator with authority to award attorney fees to the prevailing party. Chapman Medical does not address in its briefs the fact that it agreed in its arbitration pleadings to an award of attorney fees to the prevailing party and thereby submitted the issue of attorney fees to the arbitrator. We reject Chapman Medical's challenge to the award of attorney fees.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.
THOMPSON, J.

18